No. 26-30101

# In the United States Court of Appeals for the Fifth Circuit

MARIO CACHO; ANTONIO OCAMPO,
*Plaintiffs–Appellees,*

v.

SUSAN HUTSON, ORLEANS PARISH SHERIFF,
*Defendant,*

and

STATE OF LOUISIANA,
*Intervenor–Appellant.*

———————————

On Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:11-cv-225, Hon. Janis van Meerveld

———————————

**OPENING BRIEF OF INTERVENOR-APPELLANT**

———————————

ELIZABETH B. MURRILL
Attorney General of Louisiana

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 421-4088

J. BENJAMIN AGUIÑAGA
Solicitor General

ZACHARY FAIRCLOTH
Principal Deputy Solicitor General

*Counsel for Intervenor-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

Under Fifth Circuit Rule 28.2.1, a certificate of interested persons is not required because Intervenor-Appellant is a governmental party.

*/s/ Zachary Faircloth*

## STATEMENT REGARDING ORAL ARGUMENT

Intervenor-Appellant respectfully requests oral argument. This appeal presents novel and recurring questions of statutory interpretation, federalism, and the limits of federal court jurisdiction over decades-old consent decrees. The issues are significant and, in some respects, not well-developed in the case law of this Circuit. Oral argument would materially assist the Court in resolving these issues.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................ii

STATEMENT REGARDING ORAL ARGUMENT ................................ iii

TABLE OF AUTHORITIES ..................................................................vi

INTRODUCTION ..................................................................................... 1

JURISDICTIONAL STATEMENT ..........................................................3

ISSUES PRESENTED ..............................................................................4

STATEMENT OF THE CASE ..................................................................5

SUMMARY OF THE ARGUMENT ........................................................11

STANDARD OF REVIEW......................................................................13

ARGUMENT ..........................................................................................14

I.  THE PLRA GOVERNS THIS PROSPECTIVE RELIEF, AND THE
    DISTRICT COURT ERRED IN HOLDING OTHERWISE. ........................... 14

    A.  This Is a "Civil Action With Respect to Prison
        Conditions" Under the Second Clause of § 3626(g)(2). ............. 14

    B.  Because the PLRA Governs, the Automatic Stay
        Attached and the Decree Has Been Suspended by
        Operation of Law. ...................................................................... 21

II. THIS COURT MAY ALSO HOLD THAT THE DECREE DISSOLVED
    BY ITS OWN TERMS. .......................................................................... 23

III. PLAINTIFFS HAVE LONG BEEN RELEASED, SO THERE IS NO
    ONGOING CASE OR CONTROVERSY TO SATISFY ARTICLE III.................. 27

CONCLUSION ..................................................................................29

CERTIFICATE OF SERVICE..............................................................31

CERTIFICATE OF COMPLIANCE ......................................................32

# TABLE OF AUTHORITIES

**Cases**                                                   **Page(s)**

*Asadi v. G.E. Energy (USA), L.L.C.,*
720 F.3d 620 (5th Cir. 2013) ................................................................. 18

*Bonilla v. Verges Rome Architects,*
2023-00928 (La. 3/22/24), 382 So. 3d 62 ...................................... 26, 27

*Booth v. Churner,*
206 F.3d 289 (3d Cir. 2000) ................................................................. 15

*Campbell v. Melton,*
2001-2578 (La. 5/14/02), 817 So. 2d 69 ............................................. 26

*Chisom v. Louisiana ex rel. Landry,*
116 F.4th 309 (5th Cir. 2024) (en banc) ..................................... *passim*

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) ................................................................................ 28

*Crittindon v. LeBlanc,*
37 F.4th 177 (5th Cir. 2022) ............................................................... 20

*In re DeBerry,*
945 F.3d 943 (5th Cir. 2019) ............................................................... 18

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,*
601 U.S. 42 (2024) ................................................................................ 17

*Digital Realty Tr., Inc. v. Somers,*
583 U.S. 149 (2018) .............................................................................. 17

*Djie v. Garland,*
39 F.4th 280 (5th Cir. 2022) ............................................................... 19

*Freeman v. Francis,*
  196 F.3d 641 (6th Cir. 1999) ................................................................. 16

*Frew v. Janek,*
  780 F.3d 320 (5th Cir. 2015) ................................................................. 13

*Frew v. Janek,*
  820 F.3d 715 (5th Cir. 2016) ................................................................. 24

*Guerrera v. United Fin. Cas. Co.,*
  161 F.4th 913 (5th Cir. 2025) ............................................................... 13

*Handberry v. Thompson,*
  446 F.3d 335 (2d Cir. 2006) ................................................................. 16

*Hicks v. LeBlanc,*
  81 F.4th 497 (5th Cir. 2023) ................................................................. 20

*Horne v. Flores,*
  557 U.S. 433 (2009) ............................................................................. 24

*Martin v. Iowa,*
  752 F.3d 725 (8th Cir. 2014) ................................................................. 16

*Med. Ctr. Pharmacy v. Mukasey,*
  536 F.3d 383 (5th Cir. 2008) ................................................................. 20

*Miller v. French,*
  530 U.S. 327 (2000) .......................................................................... 3, 22

*Niz-Chavez v. Garland,*
  593 U.S. 155 (2021) ............................................................................. 19

*O'Shea v. Littleton,*
  414 U.S. 488 (1974) ............................................................................. 28

*Pershing, L.L.C. v. Kiebach,*
  819 F.3d 179 (5th Cir. 2016) ................................................................. 14

vii

*Porter v. Nussle,*
   534 U.S. 516 (2002) ..................................................................... 15

*Prejean v. Guillory,*
   10-0740 (La. 7/2/10), 38 So.3d 274 ...................................................... 26

*Rufo v. Inmates of Suffolk Cnty. Jail,*
   502 U.S. 367 (1992) ..................................................................... 24

*Seth v. McDonough,*
   461 F. Supp. 3d 242 (D. Md. 2020) ...................................................... 20

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
   559 U.S. 393 (2010) ..................................................................... 19

*Smith v. Sch. Bd. of Concordia Par.,*
   906 F.3d 327 (5th Cir. 2018) ............................................................ 28

*Smith v. Zachary,*
   255 F.3d 446 (7th Cir. 2001) ............................................................ 16

*Sturgeon v. Frost,*
   587 U.S. 28 (2019) ...................................................................... 17

*United States v. Sanchez-Gomez,*
   584 U.S. 381 (2018) .................................................................. 27, 28

**Statutes**

18 U.S.C. § 3626 ........................................................................ *passim*

28 U.S.C. § 1292 ........................................................................ 3, 4

28 U.S.C. § 1331 ........................................................................ 3

28 U.S.C. § 1343 ........................................................................ 3

28 U.S.C. § 1988 ........................................................................ 6

42 U.S.C. § 1983............................................................... 19, 20

La. Civ. C. art. 2046 ............................................................. 26

La. R.S. 33:81 *et seq.*............................................................ 8

La. R.S. 33:82 ...................................................................... 8

La. R.S. 33:83 ...................................................................... 8

La. R.S. 33:84 ...................................................................... 9

La. R.S. 33:85 ...................................................................... 9

**Other Authorities**

2024 La. Sess. Law Serv. Act 314 ..................................... 8, 25

Antonin Scalia & Bryan A. Garner,
   *Reading Law: The Interpretation of Legal Texts*
   (1st ed. 2012) ................................................................. 18

Fed. R. App. P. 4 .................................................................. 4

Fed. R. Civ. P. 24 ................................................................. 9

Fed. R. Civ. P. 60 ............................................... 10, 13, 23, 24

## INTRODUCTION

For more than a decade, a federal consent decree has required the Orleans Parish Sheriff's Office to treat the Orleans Parish Prison as a sanctuary jurisdiction from federal immigration authorities. The decree bars OPSO from honoring almost every ICE detainer request, from sharing release dates or addresses, and from allowing federal officers to speak with inmates absent special conditions. That prospective injunction now conflicts with Louisiana law. In 2024, the Legislature enacted Act 314, which forbids sanctuary policies and requires law-enforcement agencies to cooperate with federal immigration enforcement. The State of Louisiana intervened to end the decree.

The district court should have granted that relief. The PLRA controls "any civil action with respect to prison conditions in which prospective relief is ordered." 18 U.S.C. § 3626(b)(1). And Congress defined that phrase to reach any federal civil proceeding "with respect to … the effects of actions by government officials on the lives of persons confined in prison." § 3626(g)(2). What remains of this case fits that definition: It is prospective relief regulating how jail officials handle detainees subject to ICE detainers. Because no court made the findings

1

the PLRA requires, the State's termination motion triggered an automatic stay 30 days after filing. The district court could not avoid that statutory consequence by displacing Congress's definition with the court's own "more logical course," declaring the PLRA inapplicable, and deferring the remaining issues to the Louisiana Supreme Court. The PLRA's applicability here alone spells termination.

The decree also dissolved by its own terms. It has "permanent effect" only "absent a change in federal or state law applicable to immigration detainers." ROA.1383. Act 314 is exactly that. The district court acknowledged that Act 314 "squarely falls within the type of change contemplated by the parties," ROA.2335 n.17, but refused to give the decree's text effect unless Act 314 also satisfied conditions the decree does not contain. This Court forbade that move in *Chisom v. Louisiana ex rel. Landry*, 116 F.4th 309, 316 (5th Cir. 2024) (en banc). Consent decrees are contracts, and courts must enforce them within their four corners—not prolong federal control by adding new terms after the fact.

Finally, there is a deep jurisdictional defect. The only two Plaintiffs left OPSO custody 16 years ago. They sought damages and declaratory relief, no class was certified, and neither faces any real or immediate

2

threat of future detention in Orleans Parish. Article III does not permit a federal court to keep supervising jail policy forever based on a dispute that ended for these Plaintiffs more than a decade ago.

The Court should reverse and direct that the consent decree be terminated, the case be dismissed, or both.

## JURISDICTIONAL STATEMENT

The district court had statutory subject matter jurisdiction over the underlying action under 28 U.S.C. §§ 1331 and 1343. The State, however, contests whether that court ever had Article III jurisdiction to maintain the consent decree's prospective relief. Neither plaintiff sought injunctive relief in the complaint, neither was in OPSO custody when the decree was entered, and neither faces any real or immediate threat of future detention there. *See infra* Part III.

That jurisdictional defect does not affect this Court's appellate jurisdiction under 28 U.S.C. § 1292(a)(1), as expressly provided by 18 U.S.C. § 3626(e)(4). When the State moved to terminate prospective relief under § 3626(b) on November 7, 2025, that motion "operate[d] as a stay" of the relief by force of the statute, beginning 30 days after it was filed (on December 7, 2025). 18 U.S.C. § 3626(e)(2); *see Miller v. French*, 530

U.S. 327, 331 (2000). Under the Prison Litigation Reform Act, "[a]ny order staying, suspending, delaying, or barring the operation of the automatic stay … shall be treated as an order refusing to dissolve or modify an injunction and shall be appealable pursuant to section 1292(a)(1)," "regardless of how the order is styled." 18 U.S.C. § 3626(e)(4). Independently, to the extent the order operates as a refusal to dissolve the injunction in the "Consent Judgment for Injunctive Relief and Damages," § 1292(a)(1) supplies jurisdiction on its own terms.

The district court entered the order on February 18, 2026. ROA.2319. The State filed its notice of appeal the next day. ROA.2337. The appeal is timely under Federal Rule of Appellate Procedure 4(a)(1)(A).

## ISSUES PRESENTED

1.    Whether the PLRA's limits on prospective relief govern this consent decree so that the State's termination motion operated as an automatic stay suspending the decree by force of statute, where the decree is an injunction dictating how OPSO runs its jail, no court made the findings § 3626(b) requires, and the district court deferred ruling without invoking § 3626(e)(3)'s good-cause postponement mechanism.

4

2.      Whether the consent decree dissolved by its own terms where it has "permanent effect, absent a change in federal or state law applicable to immigration detainers," and Louisiana enacted Act 314, a change in state law applicable to immigration detainers, in 2024.

3.      Whether a live case or controversy survives where the only two Plaintiffs were released from OPSO custody 16 years ago, no class was ever certified, and the decree perpetuates prospective relief untethered to any continuing injury to them.

## STATEMENT OF THE CASE

This appeal concerns the State's motion to dissolve a consent decree that has dictated the Orleans Parish Sheriff's Office's dealings with federal immigration authorities for more than a decade.

**A.** Mario Cacho and Antonio Ocampo each left OPSO custody in 2010. ROA.30-31. In February 2011, they sued then-Sheriff Marlin Gusman. ROA.24-41. Plaintiffs accused Sheriff Gusman of detaining them beyond their scheduled release dates because of ICE immigration detainers. ROA.24-25. Their detentions beyond their release dates, they claimed, were caused by Sheriff Gusman's "deliberately indifferent failure to establish adequate procedures, policies, supervision, and

5

training" as it related to immigration detainers. ROA.72. They sought only damages and a declaratory judgment. ROA.37.

After unsuccessfully moving to transfer the case away from Judge Engelhardt, ROA.114, the parties consented to proceed before a Magistrate Judge, ROA.146. Before the case reached a bench trial, in July 2013, Plaintiffs and Sheriff Gusman agreed to a consent decree to resolve the civil action. ROA.1353-81. The next month, the court approved the "Consent Judgment for Injunctive Relief and Damages," based on the parties' agreement. ROA.1382-93.

The consent decree required the Sheriff to "adopt and implement the Orleans Parish Sheriff's Office Policy on Immigration and Customs Enforcement (ICE) Procedures," attached as an exhibit to the consent decree. ROA.1382. According to the district court's consent decree, that policy would have "permanent effect, absent a change in federal or state law applicable to immigration detainers." ROA.1383. Sheriff Gusman also agreed to pay Plaintiffs compensatory damages and to designate Plaintiffs as prevailing parties for the purposes of fees under 28 U.S.C. § 1988. ROA.1383. Under the consent decree, the court would "retain

6

jurisdiction over this action in order to enforce" implementation of the policy and to "resolve any disputes" that mediation could not. ROA.1384.

The consent decree was accompanied by a Settlement Agreement signed by both parties' attorneys. ROA.1387. That agreement purports to "impose binding obligations upon the Parties and their successors" for "full and complete resolution of the issues." ROA.1387. It also reiterates the damages and fees obligation and the court's retention of jurisdiction, along with additional standard contractual language not in the consent decree. ROA.1388-92. The agreement also repeats the requirement that former-Sheriff Gusman will "adopt and implement" the policy, which would "remain permanently in effect absent a change in federal or state law applicable to immigration detainers." ROA.1388.

The consent decree's mandated one-page policy was also attached as an exhibit. ROA.1393. Under that policy, OPSO "decline[s] all voluntary ICE detainer requests" except for those tried and convicted of first- or second-degree murder, aggravated rape or kidnapping, treason, or armed robbery. ROA.1393. And if an Orleans Criminal District Court judge "recommends" OPSO decline any "ICE hold request," "OPSO will decline" no matter the crime. ROA.1393. As to all detainees—murderers

7

and rapists alike—OPSO will never "initiate any immigration status investigation" or give ICE "information on an inmate's release date or address." ROA.1393. And if ICE investigates, OPSO blocks them at the door absent a "criminal warrant or court order transferring custody." ROA.1393. Even for federal *criminal* investigations, OPSO bars federal law enforcement authorities from the parish prison until they notify the target inmate's lawyer *and* ensure his counsel's presence. ROA.1393.

**B.** Louisiana changed its state law applicable to immigration detainers. *See* 2024 La. Sess. Law Serv. Act 314 (S.B. 208) (codified at La. R.S. 33:81 *et seq.*). As of May 2024, a "state entity, law enforcement agency, or local governmental entity may not adopt or have in effect a sanctuary policy." La. R.S. 33:82. Instead, they must "use best efforts to support the enforcement of federal immigration law," which includes cooperating with ICE information requests, maintaining immigration records, and exchanging information with other federal and state law enforcement entities. La. R.S. 33:83. When such an entities or agency receives an immigration detainer for one of its detainees, the entity or agency must (1) notify the judge of the immigration detainer for recordation as a minute entry and (2) record that detainer in the

8

detainee's file to "comply with the requests made in the immigration detainer." La. R.S. 33:84(A)–(C). Local law enforcement agencies are further expected to enter into "compliant agreement[s]" for temporary detention of those detainees by federal immigration enforcement. La. R.S. 33:84(D). The Attorney General can enforce any violation of that law by seeking an injunction and declaration against the violating local entity or agency. La. R.S. 33:85.

Despite that "change in … state law applicable to immigration detainers," ROA.1393, then-Sheriff Susan Hutson did not move for dissolution of the consent decree. So the Attorney General intervened. In February 2025, the State moved to intervene and tendered a proposed motion to terminate or dissolve the decree. ROA.1844. Because a termination motion cannot be filed until intervention is granted, *see* Fed. R. Civ. P. 24(c), the State waited until November 7, 2025, for the court to grant intervention and docket the motion. ROA.2081; ROA.2097.

The State sought relief on two independent grounds. *First*, the PLRA. As an intervenor in a civil action regarding prison conditions, the State was entitled to terminate prospective relief that was never supported by the findings the PLRA requires. 18 U.S.C. § 3626(b)(2). Its

9

motion thus "operate[d] as a stay" of the decree by force of statute 30 days after the motion was docketed. *Id.* § 3626(e)(2); *see* ROA.2116. *Second*, Rule 60(b)(5). The decree had been satisfied by its own terms once state law changed, and its continued enforcement was no longer equitable. ROA.2097.

The district court did not reach the merits of either ground. As to the PLRA, it held the statute's restrictions on prospective relief "inapplicable" to this action, reasoning that Plaintiffs' claim did not concern "prison conditions." ROA.2330. As to Rule 60(b)(5), it declined to decide—holding instead that three "antecedent questions of state law" about Act 314's scope and validity should go to the Louisiana Supreme Court, and taking the State's motion "under submission pending" their resolution. ROA.2336. The State noticed this appeal the next day. ROA.2337.

**C.** In March 2026, the Louisiana Supreme Court granted certification, docketed the matter as No. 2026-CQ-00225, and ordered expedited briefing and argument. The parties briefed the questions on that accelerated schedule, the court heard argument on April 28, 2026, and a decision remains pending.

## SUMMARY OF THE ARGUMENT

**I.** This appeal turns on the PLRA's limitations on prospective injunctive relief. The statute's limits on prospective relief reach any "civil action with respect to prison conditions in which prospective relief is ordered." 18 U.S.C. § 3626(b)(1). This is one. The decree dictates how OPSO runs its jail—whether it cooperates with ICE, whether it shares release dates, whether it allows federal officers to talk to inmates—and so concerns "the effects of actions by government officials on the lives of persons confined in prison." § 3626(g)(2). The district court resisted that definition on its own inclinations about what "prison conditions" means and the habeas carve-out. Congress defined that phrase, and a defined term controls even where it sweeps past ordinary meaning. And the carve-out proves the State's reading: Congress would not have excluded similar habeas claims unless the definition otherwise reached them.

Because the PLRA applies, the consequences are automatic. A motion to terminate prospective relief entered without the § 3626(b) findings "shall operate as a stay" on the 30th day after filing. § 3626(e)(2). The State moved on November 7, 2025; the stay attached on December 7, 2025; and the decree has been suspended by operation of law ever since.

11

Nothing the district court did changed that. Deferring the motion pending the certified questions was, "regardless of how the order is styled," an order suspending the automatic stay outside the only mechanism Congress allowed. § 3626(e)(3)–(4). The court invoked no postponement and made no good-cause finding, and in any event could not have held the stay past April 19, 2026. Termination is thus required, absent written findings based on the record under § 3626(b)(3).

**II.** Even if the PLRA did not independently require termination, the decree dissolved by its own terms. The decree takes "permanent effect, absent a change in federal or state law applicable to immigration detainers." ROA.1383. Act 314 changed that law in 2024. Under *Chisom*, 116 F.4th at 316, a court must read a consent decree within its four corners, as a contract, and "[o]nce the alleged constitutional deficiency has been remedied," end federal control. The district court conceded Act 314 is the kind of change the parties contemplated, then refused to give it effect until the Louisiana Supreme Court answers whether Act 314 is valid and applicable. But no such condition appears within the decree's four corners. Louisiana contract law forbids rewriting a clear and explicit term under the pretext of its spirit. The State needed to show only a

12

change in state law applicable to immigration detainers. It did. Termination is thus independently required under Rule 60(b)(5).

**III.** If that were not enough, no live controversy remains. Article III demands a personal stake, and the only two Plaintiffs were released from OPSO custody 16 years ago. But past exposure to challenged conduct, without continuing adverse effects, does not sustain prospective relief. No class was certified, so Plaintiffs cannot borrow the stakes of others to manufacture one. The decree binds the current Orleans Parish Sheriff to her predecessor's and Plaintiffs' policy preferences in a dispute that ended for these Plaintiffs more than a decade ago.

For any of these three reasons, this Court should reverse and direct that the consent decree be terminated, the case be dismissed, or both.

## STANDARD OF REVIEW

The Court reviews "issues of statutory interpretation *de novo*," *Guerrera v. United Fin. Cas. Co.*, 161 F.4th 913, 916 (5th Cir. 2025); the denial of Rule 60(b)(5) relief for abuse of discretion, and underlying legal conclusions *de novo*, *Frew v. Janek*, 780 F.3d 320, 326 (5th Cir. 2015); and "[i]ssues of subject matter jurisdiction … de novo." *Pershing, L.L.C. v. Kiebach*, 819 F.3d 179, 181 (5th Cir. 2016).

13

## ARGUMENT

**I.    THE PLRA GOVERNS THIS PROSPECTIVE RELIEF, AND THE DISTRICT COURT ERRED IN HOLDING OTHERWISE.**

The PLRA limits on prospective relief reach "any civil action with respect to prison conditions in which prospective relief is ordered." 18 U.S.C. § 3626(b)(1). Where such relief was entered without the findings the statute demands, an intervenor "shall be entitled to" its "immediate termination." *Id.* § 3626(b)(2); *see* ROA.2325 ("There is no dispute that when the Court issued the consent decree here, it did not make an explicit finding" under the PLRA). Because the consent decree is prospective injunctive relief that dictates how OPSO runs its jail, and no court made the findings § 3626(b) requires, the State is entitled to the decree's immediate termination or, at minimum, an automatic stay under the PLRA.

**A. This Is a "Civil Action With Respect to Prison Conditions" Under the Second Clause of § 3626(g)(2).**

The PLRA's limits on prospective relief apply to every "civil action with respect to prison conditions in which prospective relief is ordered." 18 U.S.C. § 3626(b)(1). A "civil action with respect to prison conditions" is defined as "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government

14

officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison[.]" 18 U.S.C. § 3626(g)(2).

The broad definition reaches "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). That is because, as the Third Circuit has explained, "the 'conditions of confinement' language preceding the 'or' … include[s] complaints such as those regarding cell overcrowding, poor prison construction, inadequate medical facilities, and incomplete law libraries." *Booth v. Churner*, 206 F.3d 289, 294 (3d Cir. 2000). The second clause captures far more, including "actions ranging from excessive force actions … to actions 'with respect to' a prison official's decision not to make basic repairs in the prison, or intentionally to deny a prisoner food, heating, or medical attention." *Id.* at 295. Those actions, it reasoned, "affect the lives of prisoners" by "mak[ing] their lives worse," so are subject to the PLRA's requirements. *Id.*

The relevant question for whether the PLRA's prospective injunctive limitations apply is thus whether this "civil proceeding arising under Federal law" concerns governmental officials' actions that affect

the lives of prisoners. *See, e.g.*, *Smith v. Zachary*, 255 F.3d 446, 449 (7th Cir. 2001) ("Smith's claim falls within the second half of this definition. He was affected by an action, allegedly an assault, by government officials, *viz.*, prison guards."); *accord Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999). Such actions extend even to "challenges [to] the adequacy of the defendants' provision of educational services and related ancillary services to inmates," *Handberry v. Thompson*, 446 F.3d 335, 344–45 (2d Cir. 2006), or "challenge[s] to parole procedures," *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014).

Properly understood, therefore, this action plainly falls within § 3626(g)(2)'s statutory definition. The Sheriff's policies and procedures about cooperating with ICE are "actions by government officials," and they have "effects … on the lives of persons confined in prison." § 3626(g)(2). And Plaintiffs agreed when it suits them: They defend the decree as standing between detainees and "unconstitutional and dangerous conditions in the OPP." ROA.2167. And their own complaint alleged that OPSO's practices had "effects … on the lives of persons confined in prison." ROA.25. For that reason, neither they nor the district court meaningfully disagreed that this action challenges "government

16

action that impacts a person confined in prison." ROA.2327. Instead, the court read § 3626(g)(2) to cover only actions affecting "the experience and/or quality of the prisoners' lives in prison," not "the mere fact that they are there." ROA.2327. That was reversible error.

Congress chose to expressly define "civil action with respect to prison conditions." 18 U.S.C. § 3626(g)(2). That matters because "[w]hen Congress takes the trouble to define the terms it uses, a court must respect its definitions as 'virtually conclusive.'" *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 59 (2024) (quoting *Sturgeon v. Frost*, 587 U.S. 28, 56 (2019)). Courts, therefore, must "not deviate from an express statutory definition merely because it 'varies from [the] term's ordinary meaning.'" *Id.* (quoting *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018)). In this case, Congress defined "civil action with respect to prison conditions" far broader than its ordinary meaning. As relevant here, it reaches "any civil proceeding arising under Federal law with respect to … the effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g)(2).

The district court, however, departed from that plain text by imposing its own sense of what "prison conditions" means ordinarily. *See*

17

ROA.2327 ("the State's proposal divorces the definition of 'prison conditions' entirely from the plain meaning of the words 'prison conditions'"). The "more logical course," it opined, "is to understand an action affecting the 'lives of persons confined in prison' as an action impacting the experience and/or quality of the prisoners' lives in prison, and not the mere fact that they are there." ROA.2327. But that is not how statutory interpretation works.

"In matters of statutory interpretation, text is always the alpha." *In re DeBerry*, 945 F.3d 943, 947 (5th Cir. 2019). "When ... a definitional section says that a word 'means' something, the clear import is that this is its *only* meaning." *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 623 (5th Cir. 2013) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 226 (1st ed. 2012)). "If th[at] statutory text is unambiguous, [the] inquiry begins and ends with the text." *Id.* at 622. And "no amount of policy-talk can overcome a plain statutory command." *Niz-Chavez v. Garland*, 593 U.S. 155, 171 (2021). With due respect, under these common statutory-interpretation principles, the district court was wrong to depart from clear statutory

18

text in favor of its preferred "more logical course" without so much as identifying any ambiguity in the statutory definition. *See* ROA.2327.

The only text the district court did invoke was "the explicit exclusion of 'habeas corpus proceedings challenging the fact or duration of confinement in prison,'" which, it reasoned, "makes clear that prison conditions means conditions in the prison and not the lawfulness of detention." ROA.2329.[1] But the habeas exclusion cuts the other way: If proceedings challenging the fact or duration of confinement were not otherwise captured by the plain language of § 3626(g)(2), "the statutory exception[ for habeas proceedings] would be unnecessary." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010). And courts do not read a statutory "definition implicitly to exclude" what are "explicit, conditional exceptions," rendering them "superfluous." *Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 406 (5th Cir. 2008). The existence of the habeas exclusion thus supports the State's reading that

---

[1] The district court likewise suggested in a footnote that because Congress did not "explicitly exclude[]" (like habeas proceeding) "§ 1983 claims by former prisoners challenging unlawful detention" means that "the entirety of the PLRA is focused on suits by prisoners—not former prisoners." ROA.2329 n.5. That proves far too much and "of course would turn *expressio unius est <u>exclusio</u> alterius* into *expressio unius est <u>inclusio</u> alterius.*" *Djie v. Garland*, 39 F.4th 280, 286 (5th Cir. 2022).

19

§ 1983 claims challenging confinement are within § 3626(g)(2)'s statutory definition.

Unable to find a foothold in the text, Plaintiffs (and the district court) also latched onto a single out-of-circuit district court footnote in *Seth v. McDonough*, 461 F. Supp. 3d 242, 255 n.14 (D. Md. 2020), which noted that "the PLRA does not apply to their over-detention claim" because the court did "not view that claim as challenging the conditions of their confinement." Even setting aside its limited precedential authority, that case concerned a habeas proceeding expressly excluded from § 3626(g)(2)'s reach. *See id.* at 255 (discussing plaintiffs' "petition for habeas corpus"). Accordingly, *Seth* on its own terms adds nothing new.

The district court also faulted the State for not "cit[ing] a single case where the prospective relief limitations of the PLRA were applied to an over-detention challenge." ROA.2327. But that should be no surprise. Those cases involved damages, not prospective injunctive relief. *See, e.g.*, *Hicks v. LeBlanc*, 81 F.4th 497, 502–03 (5th Cir. 2023); *Crittindon v. LeBlanc*, 37 F.4th 177, 185 (5th Cir. 2022). The "over-detention" analogy, moreover, is drastically overblown. Recall that the prospective injunctive relief here bans OPSO from cooperating with all "ICE detainer requests,"

"initiat[ing] any immigration status investigation," or giving ICE "information on an inmate's release date or address." ROA.1393. It also affirmatively requires OPSO to block ICE from the jail absent a "criminal warrant or court order transferring custody" and to notify the target inmate's lawyer *and* ensure his counsel's presence if ICE does have a warrant. ROA.1393. It is thus difficult to understand Plaintiffs' characterizing this as a PLRA-insulated "over-detention" case, when its only pulse concerns "the effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g)(2).

## B. Because the PLRA Governs, the Automatic Stay Attached and the Decree Has Been Suspended by Operation of Law.

No one meaningfully disputed the result if the PLRA applies. When the PLRA's prospective-injunction limitations apply, a motion to terminate prospective relief "shall operate as a stay" of that relief during the period "beginning on the 30th day after such motion is filed" and "ending on the date the court enters a final order ruling on the motion." 18 U.S.C. § 3626(e)(2). The stay attaches by force of the statute. As the Supreme Court has explained, the provision itself "establish[es]" the stay to "curb[] the equitable discretion of district courts." *Miller*, 530 U.S. at 339, 347–50.

21

Here, the State, as an intervenor, moved to terminate prospective relief that was approved without any finding that it is "narrowly drawn, extends no further than necessary …, and is the least intrusive means necessary." 18 U.S.C. § 3626(b)(2); *accord* ROA.2325. The court granted intervention and docketed the motion on November 7, 2025. ROA.2081, 2097. Thirty days later—December 7, 2025—the motion "operate[d] as a stay" of the decree. 18 U.S.C. § 3626(e)(2); *see* ROA.2116. And the decree has been suspended by operation of law ever since. *See Miller*, 530 U.S. at 347–50.

Nothing the district court did changed that. The court rejected the PLRA's applicability (ROA.2324-30) and took the balance of State's motion "under submission pending" the Louisiana Supreme Court's answer to its certified questions (ROA.2336). But "regardless of how the order is styled," that is just an "order staying, suspending, delaying, or barring the operation of the automatic stay" without abiding by the PLRA's mechanism for doing so. 18 U.S.C. § 3626(e)(4). To be sure, the court could have "postpone[d] the effective date of an automatic stay," but only "for not more than 60 days for good cause" beyond "general congestion of the court's calendar." § 3626(e)(3). But the district court

22

invoked no such postponement, made no good-cause finding, and could not have extended the stay past February 5, 2026, in any event.

\*    \*    \*

Because the PLRA governs, an automatic stay attached by operation of law and the consent decree has been suspended since December 7, 2025. This Court should so hold and remand with instructions to terminate the decree, absent written findings based on the record under § 3626(b)(3).

## II.    THIS COURT MAY ALSO HOLD THAT THE DECREE DISSOLVED BY ITS OWN TERMS.

This Court can independently dispose of the case on Rule 60 grounds. Under this Court's precedents, "consent decrees are 'not intended to operate in perpetuity.'" *Chisom*, 116 F.4th at 316 (citation omitted). "Once the alleged constitutional deficiency has been remedied, it is the courts' duty to bring federal control over the issue to its proper end." *Id.* The district court erred in continuing its injunction and refusing to grant relief from the judgment.

By its plain terms, the consent decree "has been satisfied, released, or discharged" or, at minimum, "applying it prospectively is no longer equitable." *See* Fed. R. Civ. P. 60(b)(5). The court need only look "within

23

its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *Chisom*, 116 F.4th at 317–18 (citation omitted). After all, "it is the language of a consent decree that defines the obligations of the parties," *id.* at 316 (citation omitted), because consent decrees are "at their core, contracts," *id.* at 318. And "the appropriate standard in assessing the satisfaction of contractual terms is 'substantial compliance.'" *Id.*; *Frew v. Janek*, 820 F.3d 715, 721 (5th Cir. 2016) (same). A judgment, moreover, is no longer equitable "if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)).

Look within the four corners of the consent decree here, and "the resolution of this matter is plain." *Chisom*, 116 F.4th at 320. The consent decree says in no uncertain terms that it has "permanent effect, *absent a change in federal or state law applicable to immigration detainers*." ROA.1383 (emphasis added). And with Act 314, the Louisiana Legislature changed state law applicable to immigration detainers in 2024. *See* 2024 La. Sess. Law Serv. Act 314 (S.B. 208). That change

means "the judgment has been satisfied," and it "puts an end" to the consent decree. *Chisom*, 116 F.4th at 320.

The district court agreed (as it must) that Act 314 was "not 'insignificant'" and "squarely falls within the type of change contemplated by the parties in agreeing that the permanent effect of the policy would last only until a change in law applicable to immigration detainers." ROA.2335 n.17. But it saw a catch: "If Act 314 is inapplicable to the consent decree and/or invalid under the Louisiana constitution," it reasoned, "then it cannot be a change in law impacting the consent decree." ROA.2335. And on that premise, it certified three state-law questions to the Louisiana Supreme Court, which remain pending today. ROA.2336.

That maneuver profoundly violates *Chisom*. Nowhere "within its four corners," 116 F.4th at 316, does the consent decree lay out the court's new "applicable and valid" requirements, ROA.2335. Those requirements are, instead, plucked from thin air, or perhaps teased out by "reference to what might satisfy the purposes of one of the parties to it." *Chisom*, 116 F.4th at 317–18. But *Chisom* rejected that move because "it is the

25

language of a consent decree that defines the obligations of the parties" under ordinary contract principles. 116 F.4th at 316 (citation omitted).

Louisiana contract law further forecloses the district court's reading-in of new obligations. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Bonilla v. Verges Rome Architects*, 2023-00928 (La. 3/22/24), 382 So. 3d 62, 65 (quoting La. Civ. C. art. 2046). More, "[w]hen a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties." *Id.* at 66 (quoting *Prejean v. Guillory*, 10-0740, p.7 (La. 7/2/10), 38 So.3d 274, 279). "Courts lack the authority to alter the terms of a contract under the guise of interpretation and should not create an ambiguity where none exists." *Id.* (citation omitted); *accord Campbell v. Melton*, 2001-2578 (La. 5/14/02), 817 So. 2d 69, 76 ("[t]he rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity").

To show the consent decree was satisfied, therefore, the State only needed to point to a "change in … state law applicable to immigration detainers." ROA.1383. It did. The district court had no basis to contort that "clear and explicit" obligation into more even in the name of "pursuing [the] spirit" of the consent decree. *Bonilla*, 382 So. 3d at 65–66; *accord Chisom*, 116 F.4th at 320. Setting aside what the court improperly read into the consent decree, it "must be found that the Act 314 is a change in law that ends the permanent effect of the consent decree by its own terms." ROA.2335.

## III.   PLAINTIFFS HAVE LONG BEEN RELEASED, SO THERE IS NO ONGOING CASE OR CONTROVERSY TO SATISFY ARTICLE III.

Candor requires addressing one more glaring issue: mootness. The two individual Plaintiffs were released from OPSO 16 years ago. ROA.30-32. But Article III demands that they have "a 'personal stake' in the outcome of the action." *United States v. Sanchez-Gomez*, 584 U.S. 381, 385 (2018). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (citation modified).

27

Here, Plaintiffs' alleged harm—detention based on an ICE hold for more than 48 hours—is long in the past. ROA.30-32, 37. And that past release does not support a live controversy sufficient for prospective relief today. The Supreme Court has "consistently refused to 'conclude that the case-or-controversy requirement is satisfied by' the possibility that a party 'will be prosecuted for violating valid criminal laws.'" *Sanchez-Gomez*, 584 U.S. at 391 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)). And without a properly certified class, Plaintiffs could not rely on the mere claim that other persons may be subject to the policy to avoid this mootness problem. *Id.* at 386–90. This consent decree did not simply provide "broader relief" than available after a trial, *cf. Smith v. Sch. Bd. of Concordia Par.*, 906 F.3d 327, 335 (5th Cir. 2018) (citation omitted), but instead granted a form of relief wholly unavailable to Plaintiffs that the district court lacked jurisdiction to perpetuate.

Without any ongoing or future risk of harm to the Plaintiffs, the court lacks jurisdiction to bind the Orleans Parish Sheriff to her predecessors' and Plaintiffs' policy preferences. The consent decree should therefore be dissolved.

28

## CONCLUSION

The Court should reverse and direct that the consent decree be terminated and the case dismissed.

Dated: June 29, 2026          Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General of Louisiana

J. BENJAMIN AGUIÑAGA
Solicitor General

*/s/ Zachary Faircloth*
ZACHARY FAIRCLOTH
Principal Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 421-4088

*Counsel for Intervenor-Appellant*

## CERTIFICATE OF SERVICE

I certify that on June 29, 2026, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

*/s/ Zachary Faircloth*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this brief complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7) because it contains 5,671 words, excluding the parts of the document exempted by Rule 32(f); and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook font, except for footnotes in 12-point font) using Microsoft Word (the same program used to calculate the word count).

*/s/ Zachary Faircloth*

Dated: June 29, 2026

32