No. 26-30101

IN THE

# United States Court of Appeals for the Fifth Circuit

MARIO CACHO; ANTONIO OCAMPO,
*Plaintiffs-Appellees*,

*v.*

SUSAN HUTSON, ORLEANS PARISH SHERIFF,
*Defendant,*

and

STATE OF LOUISIANA,
*Intervenor-Appellant.*

On Appeal from the United States District Court for the Eastern District of Louisiana,
No. 2:11-cv-225, Hon. Janis van Meerveld

## BRIEF FOR PLAINTIFFS-APPELLEES

Mary C. Yanik
TULANE LAW CLINICS
6329 Freret Street, Ste. 130
New Orleans, LA 70118

Cassandra Charles
NATIONAL IMMIGRATION LAW CENTER
1121 14th Street, NW
Washington, DC 20005

Jeremy Jong
AL OTRO LADO
634 S. Spring Street, Ste. 504
Los Angeles, CA 90014

Elise M. Baranouski
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Ave., NW
Washington, DC 20037
(202) 339-8400
ebaranouski@orrick.com

Anisha S. Dasgupta
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

Bridget Pranzatelli
NATIONAL IMMIGRATION PROJECT
1763 Columbia Road NW, Ste. 175
Washington, DC 20009

*Counsel for Plaintiffs-Appellees Mario Cacho and Antonio Ocampo*

## CERTIFICATE OF INTERESTED PERSONS

The number and style of the case are Mario Cacho; Antonio Ocampo v. Susan Hutson, Orleans Parish Sheriff, and State of Louisiana, No. 26-30101.

Pursuant to Fifth Circuit Rule 27.4 and 28.2.1, undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Plaintiffs-Appellees

Mario Cacho

Antonio Ocampo

Counsel: Orrick, Herrington & Sutcliffe LLP (Elise M. Baranouski, Anisha S. Dasgupta); Tulane Law Clinics (Mary C. Yanik); National Immigration Law Center (Cassandra Charles); Al Otro Lado (Jeremy Jong); National Immigration Project of the National Lawyers' Guild (Bridget Pranzatelli).

Defendant

Susan Hutson, Former Orleans Parish Sheriff

Michelle Woodfork, Orleans Parish Sheriff

Intervenor-Appellant

State of Louisiana

Counsel: Louisiana Department of Justice (J. Benjamin Aguiñaga, Zachary Faircloth, Elizabeth B. Murrill).

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/Elise M. Baranouski*
Elise M. Baranouski
*Counsel for Plaintiffs-Appellees Mario Cacho and Antonio Ocampo*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fifth Circuit Rule 28.2.3, Appellees Mario Cacho and Antonio Ocampo respectfully request oral argument. While Appellees maintain that this appeal should be dismissed for lack of appellate jurisdiction, the relevant jurisdictional analysis implicates a novel question of statutory interpretation, and so oral argument may assist the Court in resolving this appeal.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS .......................................i

STATEMENT REGARDING ORAL ARGUMENT ...............................iii

INTRODUCTION.......................................................................... 1

JURISDICTIONAL STATEMENT ...................................................... 4

STATEMENT OF ISSUES.................................................................. 7

STATEMENT OF THE CASE ............................................................. 8

Plaintiffs' federal constitutional claims culminate in a 2013 consent decree. ........................................................................ 8

After Louisiana enacts Act 314 in 2024, the State intervenes in Plaintiffs' suit and moves to terminate the consent decree..... 11

The District Court certifies three threshold questions of state law to the Louisiana Supreme Court and takes the State's motion under submission. ................................................ 15

The Louisiana Supreme Court accepts certification and hears the case. ........................................................................ 16

SUMMARY OF THE ARGUMENT ................................................... 17

STANDARD OF REVIEW.................................................................. 19

ARGUMENT ..................................................................................... 20

I. Neither The PLRA Nor Any Other Statute Provides Appellate Jurisdiction Over This Interlocutory Appeal............... 20

A. The PLRA does not provide appellate jurisdiction because it does not apply here. .......................................... 20

1. The PLRA does not apply because this suit is an overdetention challenge, not a "civil action with respect to prison conditions." ..................................... 21

2. If the PLRA applies, this Court should remand for the District Court to determine whether termination of the consent decree is appropriate under 18 U.S.C. § 3626(b)(3)...................................... 30

B. There is no jurisdiction under 28 U.S.C. § 1292(a)(1). ........ 32
II. The State's Article III Argument Is Unavailing. ........................... 39
CONCLUSION ........................................................................... 42
CERTIFICATE OF COMPLIANCE
CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Pearl Grp., L.L.C. v. Nat'l Payment Sys., L.L.C.*,
No. 23-10804, 2024 WL 4132409 (5th Cir. Sept. 10, 2024) ................ 37

*Amazon.com Servs. LLC v. NLRB*,
151 F.4th 221 (5th Cir. 2025) ................ 35

*Anderson v. City of New Orleans*,
38 F.4th 472 (5th Cir. 2022) ................ 19

*Anderson v. Hutson*,
114 F.4th 408 (5th Cir. 2024) ................ 33, 34

*Anderson v. Singletary*,
111 F.3d 801 (11th Cir. 1997) ................ 28

*Bell v. Wolfish*,
441 U.S. 520 (1979) ................ 27

*Benjamin v. Jacobson*,
172 F.3d 144 (2d Cir. 1999) ................ 31

*Bernhard v. Whitney Nat'l Bank*,
523 F.3d 546 (5th Cir. 2008) ................ 39

*Booth v. Churner*,
206 F.3d 289 (3d Cir. 2000) ................ 24, 25, 26

*Bordelon Marine, L.L.C. v. Bibby Subsea Rov, L.L.C.*,
685 F. App'x 330 (5th Cir. 2017) ................ 40

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981) ................ 33, 34, 36

*Castillo v. Cameron Cnty.*,
238 F.3d 339 (5th Cir. 2001) ................ 32

*City of El Cenizo v. Texas*,
890 F.3d 164 (5th Cir. 2018) ... 8

*Cooper v. Texas Alcoholic Beverage Comm'n*,
820 F.3d 730 (5th Cir. 2016) ... 40, 41

*Davis v. Fechtel*,
150 F.3d 486 (5th Cir. 1998) ... 28

*Galarza v. Szalczyk*,
745 F.3d 634 (3d Cir. 2014) ... 8

*Gould v. Control Laser Corp.*,
650 F.2d 617 (5th Cir. Unit B 1981) ... 36

*Gray Line Motor Tours, Inc. v. City of New Orleans*,
498 F.2d 293 (5th Cir. 1974) ... 37

*Handberry v. Thompson*,
446 F.3d 335 (2d Cir. 2006) ... 25

*Kramer v. Caruana*,
No. 3:25-CV-50166, 2026 WL 1101306
(N.D. Ill. Apr. 23, 2026) ... 24

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
659 F.3d 421 (5th Cir. 2011) ... 40

*Loyd v. Ala. Dep't of Corr.*,
176 F.3d 1336 (11th Cir. 1999) ... 31

*Martin v. Iowa*,
752 F.3d 725 (8th Cir. 2014) ... 25

*McNeal v. LeBlanc*,
90 F.4th 425 (5th Cir. 2024) ... 22, 29

*MS Tabea Schiffahrtsgesellschaft MBH & Co. KG v. Bd. of Comm'rs of Port of New Orleans*,
636 F.3d 161 (5th Cir. 2011) ... 39

*Navy v. Sch. Bd. of St. Mary Par.*,
166 F.4th 550 (5th Cir. 2026) ............................................ 6, 34, 35, 36

*Ward by his Next Friend v. Muth*,
No. 1:16-CV-00917, 2026 WL 1974743
(W.D. Tex. July 7, 2026) ............................................................ 24

*O'Sullivan v. City of Chicago*,
396 F.3d 843 (7th Cir. 2005) ............................................................ 41

*Phillips v. Pembroke Real Est., Inc.*,
459 F.3d 128 (1st Cir. 2006) ............................................................ 37

*Preiser v. Rodriguez*,
411 U.S. 475 (1973) ............................................................ 26, 27, 28, 29

*Rey v. LCMC Health Care Partners, L.L.C.*,
181 F.4th 574 (5th Cir. 2026) ............................................................ 33, 36

*Rufo v. Inmates of Suffolk Cnty. Jail*,
502 U.S. 367 (1992) ............................................................ 39

*Santana v. United States*,
98 F.3d 752 (3d Cir. 1996) ............................................................ 28

*Seth v. McDonough*,
461 F. Supp. 3d 242 (D. Md. 2020) ............................................................ 23

*Seth v. McDonough*,
No. 8:20-cv-01028-PX (D. Md. July 7, 2020) ............................................ 23

*Sherri A.D. v. Kirby*,
975 F.2d 193 (5th Cir. 1992) ............................................................ 34

*Waffenschmidt v. MacKay*,
763 F.2d 711 (5th Cir. 1985) ............................................................ 4

*Ziglar v. Abbasi*,
582 U.S. 120 (2017) ............................................................ 27

**Statutes**

18 U.S.C. § 3626 ........................................................................ *passim*

18 U.S.C. § 3626(a)(3)........................................................................28

18 U.S.C. § 3626(b) ........................................................................ 5, 21, 30

18 U.S.C. § 3626(b)(1)(A)........................................................................20

18 U.S.C. § 3626(b)(2)........................................................................31

18 U.S.C. § 3626(b)(3)........................................................ 18, 30, 31, 32

18 U.S.C. § 3626(e) ........................................................................30

18 U.S.C. § 3626(e)(2)........................................................................ 20, 21

18 U.S.C. § 3626(e)(4) ........................................................................ *passim*

18 U.S.C. § 3626(g)(2)........................................................................ *passim*

18 U.S.C. § 3626(g)(4)........................................................................28

28 U.S.C. § 1292(a)(1)........................................................................ *passim*

42 U.S.C. § 1983 ........................................................................ *passim*

La. R.S. 33:81(6) ........................................................................12

La. R.S. 33:82 ........................................................................12

La. R.S. 33:83(A)........................................................................11

La. R.S. 33:84(A)(2) ........................................................................11

**Regulations and Rules**

8 C.F.R. § 287.7 ........................................................................8

8 C.F.R. § 287.7(a)........................................................................8

8 C.F.R. § 287.7(d)........................................................................8

Fed. R. Civ. P. 60 .................................................................. 15, 33

Fed. R. Civ. P. 60(b) .................................................................. *passim*

Fed. R. Civ. P. 60(b)(5) .................................................................. *passim*

**Other Authorities**

152 Cong. Rec. S14419 (Sep. 27, 1995) .................................................. 29

Amended Complaint, *Seth v. McDonough*,
No. 8:20-cv-01028-PX (D. Md. July 7, 2020), ECF No. 124 ............... 23

Certification to State Court, 17A *Fed. Prac. & Proc. Juris.* §
4248 (3d ed. 2026) .................................................................. 38

Certification Order and Special Briefing Order, *Cacho v.
Gusman*, No. 2026-CQ-00225 (La. S. Ct. Mar. 13, 2026),
https://tinyurl.com/3khssjyk .................................................. 16

Louisiana House of Representatives, Archived Video: House
Chamber Video at 2:32:28-2:32:34 (May 20, 2024),
https://tinyurl.com/59mythv8 .................................................. 13

Louisiana House of Representatives, Archived Video: Senate
Floor at 51:59-52:11 (Mar. 27, 2024),
https://tinyurl.com/4awrrp4f .................................................. 12

Second Amended and Restated Consent Decree Regarding
the New Orleans Police Department, *United States v. City
of New Orleans*, No. 2:12-cv-1924 (E.D. La. Apr. 18, 2024),
Dkt. No. 778, https://tinyurl.com/yss9txev ....................................... 12

## INTRODUCTION

The consent decree at the heart of this case was entered to remedy the serious constitutional problem of overdetention in Orleans Parish Prison, where Plaintiffs spent months deprived of their liberty after their sentences had ended. The State now thinks it is time for that consent decree to come to an end, and it has urged the District Court to dissolve the decree. That motion is still pending before the District Court. Despite this fact, the State now asks this Court to intervene, short-circuiting both the District Court's consideration of the motion and the Louisiana Supreme Court's consideration of threshold state-law questions on which that court accepted certification. This Court should decline the State's request and should dismiss this premature interlocutory appeal for lack of appellate jurisdiction.

The State fails in its attempt to establish appellate jurisdiction through 18 U.S.C. § 3626(e)(4) of the Prison Litigation Reform Act (PLRA), because the PLRA does not apply here. Before the District Court, the State invoked the limitations on prospective relief contained in 18 U.S.C. § 3626 and urged dissolution of the consent decree and an automatic stay of the decree in the interim. But the District Court

rejected those arguments for the simple reason that § 3626 applies only to "civil action[s] with respect to prison conditions," and Plaintiffs' challenge to their unconstitutional overdetention was not a challenge to prison conditions. The District Court was correct that § 3626 does not apply here, and other courts have reached the same conclusion, emphasizing that overdetention claims challenge the fact of confinement absent lawful authority—not conditions or actions by government officials that make life in prison worse. And because § 3626 does not apply, its mechanism for immediate interlocutory appeals—which is triggered where a movant in a "civil action with respect to prison conditions" is denied an automatic stay of prospective relief—does not supply appellate jurisdiction.

The State's attempt to rely directly on 28 U.S.C. § 1292(a)(1) for appellate jurisdiction is even weaker. That provision allows for an immediate interlocutory appeal where a district court explicitly refuses to dissolve an injunction—and, in some cases, where a district court's order has the practical effect of refusing to dissolve an injunction and the appellant shows that an immediate appeal is necessary. But here, the District Court is actively considering whether to dissolve the

injunction, and it is awaiting crucial input from the Louisiana Supreme Court on this question. That input could come any day now, as the Louisiana Supreme Court has already accepted certification and heard argument on an expedited basis. Depending on how the Louisiana Supreme Court resolves these state-law questions, the District Court may well side with the State and dissolve the injunction. If, instead, the District Court refuses to dissolve the injunction, the State will be entitled to its appeal then—but not now.

Finally, the State gestures broadly to Article III concerns, wrongly asserting that there is no longer anything at stake in this case. But even if this Court had appellate jurisdiction to reach this question, district courts have Article III jurisdiction to administer consent decrees—which are final judgments, after all. If the State wishes to terminate the consent decree based on what it terms Article III concerns, it can raise them under Rule 60(b) in the District Court, allowing Plaintiffs a chance to rebut the State's factual assumptions.

In short, this case belongs in the District Court, and this Court should dismiss the appeal for lack of jurisdiction.

## JURISDICTIONAL STATEMENT

The District Court has jurisdiction to consider the State's motion to terminate or dissolve the consent decree. *See Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) ("Courts possess the inherent authority to enforce their own injunctive decrees."); *see also* ROA.1383-84 (Consent Decree ¶ 8) (providing that District Court would "retain[] jurisdiction over this action in order to enforce" the decree and "resolve any disputes regarding [its] implementation and enforcement").

When the District Court decides the State's motion, this Court will have jurisdiction to review that decision under 28 U.S.C. § 1292(a)(1).

This Court does not have appellate jurisdiction over what the State currently seeks to appeal: the District Court's order certifying state-law questions to the Louisiana Supreme Court and taking the State's motion under submission pending the resolution of those state-law questions. ROA.2319-36.[1] The State asserts two potential bases for establishing appellate jurisdiction, neither of which succeeds.

[1] The parties consented to proceed before a United States Magistrate Judge, *see* ROA.146, and thus the relevant order was issued by a magistrate.

The State first raises 18 U.S.C. § 3626(e)(4) of the Prison Litigation Reform Act (PLRA), which is triggered only in circumstances that are not presented here: namely, when a motion to modify or terminate prospective relief is filed in a "civil action with respect to prison conditions," *id.* at § 3626(b). As Plaintiffs explain below, *see infra* I.A.1, their overdetention challenge is not a "civil action with respect to prison conditions" within the meaning of § 3626, because they challenged neither the "conditions" of their confinement nor particular actions by prison officials that made their lives in prison worse, *see* § 3626(g)(2). Rather, they brought this action to challenge the very fact of their imprisonment after any lawful authority for detaining them had lapsed. No court has ever held that such a suit is a "civil action with respect to prison conditions," and it is not. The provision of the PLRA that the State seeks to rely on for interlocutory appellate jurisdiction thus has no application to Plaintiffs' suit.

The State's alternative reliance on 28 U.S.C. § 1292(a)(1) likewise rests on an incorrect characterization of this suit. The State argues that, "to the extent the [District Court's] order operates as a refusal to dissolve the injunction in the 'Consent Judgment for Injunctive Relief

and Damages,' 1292(a)(1) supplies jurisdiction on its own terms." OB4. But as Plaintiffs explain in greater detail below, *see infra* I.B, the District Court's order was neither formally nor functionally "a refusal to dissolve the injunction," *Navy v. Sch. Bd. of St. Mary Par.*, 166 F.4th 550, 555 (5th Cir. 2026). Rather, the District Court took the State's motion under submission while the Louisiana Supreme Court decides certain controlling state-law questions. *See* ROA.2319-20, 2335-2336.

The Louisiana Supreme Court has already heard oral argument on those questions, and when it renders a decision, the District Court will resolve the State's motion to terminate or dissolve the consent decree. This case is thus in a similar procedural posture to *Navy v. School Board of St. Mary Parish*. There, this Court dismissed a purported interlocutory appeal for lack of appellate jurisdiction where the order being challenged "[did] nothing but maintain the *status quo* with regard to the injunction" and the motion to dissolve was still pending. *See* 166 F.4th at 555.

For these reasons, and as explained more fully below, this appeal should be dismissed for lack of jurisdiction.

## STATEMENT OF ISSUES

1. Whether there is appellate jurisdiction over this interlocutory appeal.

   a. Whether the PLRA and its mechanism for immediate interlocutory appeal, which apply only to "civil action[s] with respect to prison conditions," apply to this action challenging Plaintiffs' unlawful overdetention.

   b. Whether 28 U.S.C. § 1292(a)(1)'s authorization for interlocutory appeals from orders "refusing to dissolve … injunctions" provides jurisdiction where the District Court took under submission the State's motion to dissolve the consent decree, to enable the Louisiana Supreme Court's resolution of three certified state-law questions.

2. Whether the State's late-breaking Article III arguments compel any action by this Court, where there is no appellate jurisdiction, trial courts have inherent authority over the administration of pre-existing decrees, and the State has not yet presented its Article III arguments as a basis for dissolving the final judgment under Rule 60(b).

## STATEMENT OF THE CASE

***Plaintiffs' federal constitutional claims culminate in a 2013 consent decree.***

In 2011, Plaintiffs Mario Cacho and Antonio Ocampo filed suit in federal district court against then-Orleans Parish Sheriff Marlin Gusman. *See generally Cacho et al. v. Gusman*, No. 11-cv-00225 (E.D. La.). They alleged federal constitutional claims and state-law tort claims based on their unlawful detention in the Orleans Parish Prison for *months* after they had completed their sentences for minor criminal charges. *See* ROA.24-38. Their lawsuit tied this overdetention to the Orleans Parish Sheriff's Office's (OPSO's) policy related to "immigration holds" or "immigration detainers" issued by ICE. *See* 8 C.F.R. § 287.7.

Federal regulations authorize ICE to issue detainers, which are voluntary "request[s]" that local law enforcement agencies "maintain custody of [immigrants in criminal custody] for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by" federal immigration officials. 8 C.F.R. § 287.7(a), (d); *Galarza v. Szalczyk*, 745 F.3d 634, 639-45 (3d Cir. 2014) (explaining that ICE detainers are not, and cannot be, mandatory); *see also City of El Cenizo v. Texas*, 890 F.3d 164, 178 (5th Cir. 2018)

(observing that "the Tenth Amendment prevents Congress from compelling … municipalities to cooperate in immigration enforcement"). Plaintiffs alleged that OPSO had a policy of "submitting" to these ICE detainers and then "holding individuals in indefinite detention … beyond [the] 48 hours" authorized by the detainer. ROA.25 (¶ 2). For example, after Mr. Cacho completed his sentence for a municipal violation for disturbing the peace, he was held for an additional 164 days (more than five months) on an expired ICE detainer. ROA.29-30 (¶¶ 26-32). Similarly, after Mr. Ocampo completed his sentence for misdemeanor battery, he was held for an additional 91 days (about three months) pursuant to an ICE detainer. ROA.31 (¶¶ 42-47). Plaintiffs alleged that they would have been held indefinitely had it not been for their extensive legal efforts to secure their release. ROA.30, 32 (¶¶ 33-38, 48-55). Plaintiffs' complaint sought, among other relief, damages, a declaratory judgment that OPSO's overdetention policy was unconstitutional, and "such other relief as the Court deems just and proper." ROA.37.

Shortly before trial, Plaintiffs and OPSO reached a proposed agreement and requested that the District Court enter a consent

judgment. *See* ROA.1353-81. In August 2013, the District Court approved and entered the consent judgment, ROA.1382-86, which incorporated the parties' settlement agreement, ROA.1387-92, and the revised OPSO policy on ICE detainers required by the consent judgment, ROA.1393.

The consent decree directed OPSO to adopt and implement the revised OPSO policy to govern how OPSO cooperates with ICE, providing that the policy will have "permanent effect, absent a change in federal or state law applicable to immigration detainers." ROA.1382-83 (¶ 4). Of particular note, the policy requires OPSO to "decline all voluntary ICE detainer requests"—that is, requests that "seek[] continued detention of an inmate beyond expiration of municipal, state, or federal charges, or a finding of no probable cause, or a posting of bail or parole, or a completion of a sentence, or lifting of another jurisdiction or agency's detainer, or a court ordered release"—unless the individual's charge is for certain enumerated offenses, namely murder, aggravated rape, aggravated kidnapping, treason, or armed robbery with use of a firearm. ROA.1393 (¶¶ 1-2). It further requires that OPSO "not initiate any immigration status investigation into individuals in OPSO

custody or affirmatively provide information on an inmate's release date or address to ICE." ROA.1393 (¶ 3). It also puts in place certain procedural protections, including notice and access to counsel prior to certain ICE interviews, and establishes a process for adjudicating alleged violations of the consent decree. ROA.1393 (¶¶ 3-4).

Rather than requiring the appointment of a monitor at taxpayers' expense, the consent decree provides that "Plaintiff Representatives"—defined as the "New Orleans Workers' Center for Racial Justice and National Immigration Law Center"—may raise any violations of the consent decree with the Sheriff. ROA.1388-90. If informal discussions and mediation fail, both "the Sheriff and the Plaintiff Representatives" are entitled to "file a complaint with the [District Court] seeking to enforce [the] Consent Judgment." ROA.1389.

***After Louisiana enacts Act 314 in 2024, the State intervenes in Plaintiffs' suit and moves to terminate the consent decree.***

In 2024, the Louisiana legislature passed Act 314 (then referred to as S.B. 208), which directs local law enforcement agencies to "use best efforts to support … enforcement of federal immigration law," La. R.S. 33:83(A), and to "comply with the requests made in [an] immigration detainer," La. R.S. 33:84(A)(2). The Act provides that local law

enforcement "may not adopt or have in effect a sanctuary policy," La. R.S. 33:82, which the Act defines as a local policy "prohibit[ing] or imped[ing] a law enforcement agency from communicating or cooperating with a federal immigration agency," including by prohibiting "[c]omplying with an immigration detainer," La. R.S. 33:81(6).

Prior to passing the law, the State legislature discussed at length two federal consent decrees potentially implicated by Act 314: the OPSO consent decree at issue here and a separate consent decree governing the New Orleans Police Department. *See* Second Amended and Restated Consent Decree Regarding the New Orleans Police Department, *United States v. City of New Orleans*, No. 2:12-cv-1924 (E.D. La. Apr. 18, 2024), Dkt. No. 778, https://tinyurl.com/yss9txev. In the face of significant concern about Act 314's impact on the consent decrees, the bill's sponsors and supporters repeatedly asserted that Act 314 would not conflict with the OPSO consent decree. *See, e.g.*, Louisiana House of Representatives, Archived Video: Senate Floor at 51:59-52:11 (Mar. 27, 2024), https://tinyurl.com/4awrrp4f (Senator Miguez, the bill's sponsor, telling the Senate: "In the case of New

Orleans, this bill does not violate the consent decree. Nothing in this bill requires cities to take on the enforcement of federal immigration laws or investigate immigration status."); Louisiana House of Representatives, Archived Video: House Chamber Video at 2:32:28-2:32:34 (May 20, 2024), https://tinyurl.com/59mythv8 (Representative Landry, the House bill manager, stating that the bill would not "jeopardiz[e] the New Orleans [consent] decree").

Following Act 314's passage, the State intervened in this case and sought to terminate or dissolve the consent decree. ROA.2081-96, 2099-2111. Arguing that the PLRA applied to Plaintiffs' suit, the State contended that the consent decree should be subject to an automatic stay under the PLRA and that the consent decree ultimately should be terminated for failure to comply with the PLRA's limitations on prospective relief. *See* 18 U.S.C. § 3626; ROA.2106-08. The State also argued that Act 314's enactment provided grounds to terminate the consent decree under Federal Rule of Civil Procedure 60(b)(5). *See* ROA.2108-110. The State contended that Act 314 constituted "a change in … state law applicable to immigration detainers" that ended the consent decree under the decree's own terms. ROA.2108-09 (emphasis

omitted); *see also* ROA.1382-83 (¶ 4) (providing that the revised OPSO policy has "permanent effect, absent a change in federal or state law applicable to immigration detainers"). Alternatively, the State argued that Act 314's enactment meant that the consent decree was "no longer equitable," Fed. R. Civ. P. 60(b)(5), because Act 314 "expressed [the State's] interest" that "[s]tate and local law enforcement agencies must cooperate with federal immigration officials." ROA.2110.

Plaintiffs opposed termination of the consent decree. *See* ROA.2134-68. Plaintiffs explained first that the PLRA did not apply to their overdetention challenge, because it was not a "civil action with respect to prison conditions," as defined by 18 U.S.C. § 3626(g)(2). *See* ROA.2146-51. Specifically, "Plaintiffs' claims challenge[d] a policy of unlawful detention, rather than anything about prison life." ROA.2150.

With respect to the State's Rule 60(b)(5) arguments, which were all based on Act 314, Plaintiffs requested certification to the Louisiana Supreme Court of three threshold state-law questions: (1) whether Act 314 applies to this preexisting consent decree, contrary to the assurances of Act 314's sponsors; (2) whether the Act is unconstitutional under the home-rule provision of the Louisiana Constitution, because it

infringes on the powers reserved to local government entities; and (3) whether the Act is invalid under the unfunded-mandate provision of the Louisiana Constitution, because it requires OPSO to bear the costs of detaining immigrants on ICE detainers without the requisite local approval or appropriated funds. ROA.2154-55. As Plaintiffs' opposition explained, if Act 314 were unconstitutional or did not apply to the OPSO consent decree, then the Act would not justify terminating the consent decree under Federal Rule of Civil Procedure 60(b)(5). ROA.2154-55, 2159-65. OPSO took no position on the State's motion.

***The District Court certifies three threshold questions of state law to the Louisiana Supreme Court and takes the State's motion under submission.***

Upon consideration of the State's motion to terminate the consent decree, the District Court first held that the PLRA was inapplicable to Plaintiffs' claims because their overdetention challenge was not a "civil action with respect to prison conditions." ROA.2324-30, 2336. Thus, the PLRA neither provided a basis to terminate the consent decree nor imposed an automatic stay. ROA.2324-30, 2336.

As to the State's Rule 60(b)(5) arguments, the District Court explained that, "while the State may be entitled to relief under Rule

60," answers to the three state-law questions Plaintiffs had identified about Act 314's scope and constitutionality would inform that analysis, and so those questions should be certified to the Louisiana Supreme Court. ROA.2335-36. The District Court explained that, "[i]f Act 314 is inapplicable to the consent decree and/or invalid under the Louisiana constitution, then it cannot be a change in law impacting the consent decree and it would not be equitable to dissolve the consent decree as a result of the inapplicable and/or invalid act." ROA.2335. And the District Court further explained that if the Louisiana Supreme Court were to find that "Act 314 is applicable and valid," the District Court would apply that understanding when evaluating the State's motion.

The District Court thus stated that the State's motion to terminate or dissolve the consent decree would be "taken under submission pending the resolution of the [state-law] questions." ROA.2336. It did not deny the motion.

***The Louisiana Supreme Court accepts certification and hears the case.***

In March 2026, just one month after the District Court issued its order, the Louisiana Supreme Court accepted the certification and ordered expedited briefing and argument. *See* Certification Order and

Special Briefing Order, *Cacho v. Gusman*, No. 2026-CQ-00225 (La. S. Ct. Mar. 13, 2026), https://tinyurl.com/3khssjyk. The Louisiana Supreme Court heard oral argument on April 28, 2026, and the parties are now awaiting a decision on whether Act 314 was meant to impact the preexisting consent decree in this case and, separately, whether Act 314 conflicts with Louisiana's constitution.

In the meantime, the State's motion to dissolve or terminate the consent decree remains pending in the District Court.

## SUMMARY OF THE ARGUMENT

**I.** Neither the PLRA nor any other statute provides appellate jurisdiction over this interlocutory appeal from an order that merely took the State's motion to terminate a consent decree under submission while the Louisiana Supreme Court decides key state-law questions. Therefore, this Court should dismiss the appeal.

**A.** The State's first proffered basis for appellate jurisdiction is 18 U.S.C. § 3626(e)(4) of the PLRA, but the PLRA does not provide appellate jurisdiction because it does not apply here. The District Court correctly concluded that an overdetention challenge is not a "civil action with respect to prison conditions," within the meaning of § 3626. That

phrase encompasses "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g)(2). But an overdetention challenge is not about the experience or quality of a person's life in prison—it is about whether the person should have been in prison at all. That is why other courts confronted with this question have explicitly declined to apply § 3626 to overdetention challenges. This Court likewise should hold that § 3626 does not apply. If this Court disagrees with those courts and concludes that the PLRA does apply here, the next step would be to remand for the District Court to determine whether termination of the consent decree is appropriate under 18 U.S.C. § 3626(b)(3).

**B.** The State's back-up argument for appellate jurisdiction, which relies on 28 U.S.C. § 1292(a)(1), is equally flawed. Section 1292(a)(1) is a narrow exception to the general rule that appeals can be taken only from final judgments. It allows for interlocutory appeals where a district court explicitly refuses to dissolve an injunction, but it rarely permits appeals from orders that merely have the "practical effect" of refusing to dissolve an injunction. Here, the order taking the State's

motion under submission while the Louisiana Supreme Court resolves certified state-law questions did not even have the "practical effect" of refusing to dissolve the injunction, as this Court's cases make clear. And even if it did, the State makes no effort to show that this is a rare case where immediate appeal from such an order is necessary. Regardless, the District Court did not abuse its discretion by taking the State's motion under submission pending the Louisiana Supreme Court's resolution of the certified questions.

**II.** Finally, the State's invocation of Article III does not entitle it to any relief from the final judgment at this juncture. To start, this Court considers its own jurisdiction before evaluating a district court's subject-matter jurisdiction, and this Court does not have appellate jurisdiction here. But in any event, a district court has Article III jurisdiction to oversee its own final judgments, and any challenge to that final judgment based on alleged mootness must be channeled through Rule 60(b) and presented to the District Court.

## STANDARD OF REVIEW

This Court reviews "*de novo*" an "issue of law" regarding the interpretation of the PLRA. *Anderson v. City of New Orleans*, 38 F.4th

472, 479 (5th Cir. 2022). While "denial of a Rule 60(b) motion is reviewed for abuse of discretion," *id.*, this Court has never identified a standard for reviewing a district court's case-management decision to take a Rule 60(b) motion under submission pending a state court's resolution of certified questions—nor has this Court ever previously found jurisdiction to review such a decision.

## ARGUMENT

### I. Neither The PLRA Nor Any Other Statute Provides Appellate Jurisdiction Over This Interlocutory Appeal.

The State is wrong twice over in proposing 18 U.S.C. § 3626(e)(4) of the PLRA and 28 U.S.C. § 1292(a)(1) as two independent bases for jurisdiction over this interlocutory appeal. *See* OB3-4. For the reasons explained below, neither of these provisions applies here, and this Court should dismiss the appeal for lack of jurisdiction.

#### A. The PLRA does not provide appellate jurisdiction because it does not apply here.

18 U.S.C. § 3626 of the PLRA places limitations on prospective relief in "civil action[s] with respect to prison conditions." When a motion to modify or terminate prospective relief is made in such a suit, that motion operates as a stay of the prospective relief beginning 30 days after the motion is filed. *See* §§ 3626(b)(1)(A), (e)(2). And if the

court blocks the operation of that automatic stay, § 3626(e)(4) provides for an immediate interlocutory appeal to obtain the stay. Conversely, where there is no motion under § 3626(b), there is no right to an automatic stay of prospective relief under § 3626(e)(2), and there is no immediate appeal under § 3626(e)(4).

Here, § 3626's limitations on prospective relief do not apply, and § 3626(e)(4)'s narrow path to appellate jurisdiction was never triggered. As Plaintiffs explain below, the State did not file a motion to terminate relief *in a "civil action with respect to prison conditions*," because this is not such an action. § 3626(b) (emphasis added); *see also* §§ 3626(e)(2), (4) (making the automatic stay and the related right to appeal contingent on the filing of a motion "under subsection (b)"); OB21 (recognizing that "a motion to terminate prospective relief 'shall operate as a stay' of that relief" only "[w]hen the PLRA's prospective-injunction limitations apply").

#### 1. The PLRA does not apply because this suit is an overdetention challenge, not a "civil action with respect to prison conditions."

As the District Court found, Plaintiffs' overdetention challenge is not a "civil action with respect to prison conditions" within the meaning

of 18 U.S.C. § 3626 of the PLRA. Thus, it is not subject to § 3626's limitations on prospective relief. *See* ROA.2324-30.

Section 3626 of the PLRA provides that a "civil action with respect to prison conditions" encompasses "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g)(2). The State still has not identified a single case in any court holding that the PLRA applies to an overdetention challenge, nor are Plaintiffs aware of such a case. There is a good reason for that: Plaintiffs challenging overdetention are not challenging "conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison"; rather, they are challenging the constitutionality of *being confined in prison at all* after any legal authority to detain them has lapsed. *See, e.g.*, *McNeal v. LeBlanc*, 90 F.4th 425, 431 (5th Cir.), *cert. denied*, 145 S. Ct. 266 (2024) (explaining that plaintiff who brought § 1983 overdetention claim challenged "the 41 days he was imprisoned beyond his release date").

Consistent with that common-sense interpretation, multiple district courts have concluded that overdetention claims do not fall within § 3626(g)(2)'s definition of a "civil action with respect to prison conditions."

First, prior to the district court proceedings in this case, a federal district court in Maryland explicitly held "that the PLRA does not apply to [an] over-detention claim," explaining that such a claim does not "challeng[e] the conditions of [plaintiffs'] confinement." *Seth v. McDonough*, 461 F. Supp. 3d 242, 255 n.14 (D. Md. 2020). The State now suggests that *Seth* "adds nothing new" because the "over-detention claim" there "concerned a habeas proceeding expressly excluded from § 3626(g)(2)'s reach." OB20. But that is factually incorrect. The overdetention claim brought as Count II of the complaint in *Seth* sought relief under § 1983 for an alleged "unconstitutional 'policy' of detaining COVID-19-positive individuals after they are legally entitled to release." *See* 461 F. Supp. 3d at 249, 255 n.14; *see also* Amended Complaint at 51, *Seth v. McDonough*, No. 8:20-cv-01028-PX (D. Md. July 7, 2020), ECF No. 124 (asserting Count II under 42 U.S.C. § 1983 as a Fourteenth Amendment overdetention claim).

More recently, a district court in Texas held that the PLRA was "plainly not applicable" to a § 1983 case "challenging the constitutionality of [plaintiffs'] continued confinement," as opposed to "the conditions of the individual jails in which they are held." *Ward by his Next Friend v. Muth*, No. 1:16-CV-00917, 2026 WL 1974743, at *25 (W.D. Tex. July 7, 2026) (referencing § 3626's definition). And a district court in Illinois endorsed the reasoning of the District Court in this case to hold that "the PLRA doesn't apply" to a § 1983 overdetention challenge because a plaintiff bringing an overdetention claim "challenges his presence in the prison rather than any condition within the prison itself"—that is, "the *fact* of his confinement, not the conditions of it." *Kramer v. Caruana*, No. 3:25-CV-50166, 2026 WL 1101306, at *6 (N.D. Ill. Apr. 23, 2026).

The State's own authorities do not support its assertion that § 3626 reaches overdetention challenges. As the Third Circuit explained in *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000) (cited at OB15), the "conditions of confinement" clause in § 3626(g)(2) covers complaints about circumstances like "cell overcrowding, poor prison construction, inadequate medical facilities, and incomplete law

libraries." *Id.* at 294. And the second clause—regarding "effects of actions by government officials on the lives of persons confined in prison"—reaches disputes like "excessive force actions" and actions challenging "a prison official's decision not to make basic repairs in the prison, or intentionally to deny a prisoner food, heating, or medical attention." *Id.* at 294-95. Those examples all focus on circumstances and actions that make *life in prison* "worse." *Id.* at 295. So, too, do suits about "the adequacy of [a prison's] provision of educational services." *Handberry v. Thompson*, 446 F.3d 335, 344-45 (2d Cir. 2006) (cited at OB16).[2] Overdetention claims are fundamentally different: They challenge the very fact of being in prison when one ought to be at liberty.

---

[2] The State misplaces its reliance (OB16) on *Martin v. Iowa*, 752 F.3d 725 (8th Cir. 2014). In that case, a former inmate argued that § 3626(g)(2) should not apply to his suit challenging the failure to provide him with an in-person parole interview "because the parole board in Iowa is not a part of the prison itself." *Id.* at 727. The Eighth Circuit's rejection of that argument sheds little light on the question in this case. And in any event, as the District Court observed, the availability of an in-person parole interview "affected the prisoner's experience in prison as opposed to resulting in allegedly illegal confinement." ROA.2328.

Consistent with the *Booth* court's reading of § 3626(g)(2), "an action affecting the 'lives of persons confined in prison'" should be understood as conduct "impacting the experience and/or quality of the prisoners' lives in prison, and not the mere fact that they are there." ROA.2327. As the District Court noted, the State's contrary reading of § 3626(g)(2) "divorces the definition of 'prison conditions' entirely from the plain meaning of the words 'prison conditions.'" ROA.2327. The State misses the mark in attempting to recast the District Court's passing observation as the District Court "imposing its own sense of what 'prison conditions' means ordinarily." OB17.

Finally, to the extent that § 3626(g)(2)'s exclusion of "habeas corpus proceedings challenging the fact or duration of confinement in prison" sheds any light on the preceding clauses, the exclusion supports Plaintiffs—not the State. In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court characterized the "core" of habeas corpus as focused on "the constitutionality of [a prisoner's] physical confinement," *id.* at 489—that is, "the very fact or duration of his physical imprisonment," *id.* at 500—but explicitly left open the possibility that "habeas corpus may … also be available to challenge … prison conditions." *Id.* at 499-

500; *see also Bell v. Wolfish*, 441 U.S. 520, 527 n.6 (1979) ("[W]e leave to another day … the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of the confinement itself."). The question of whether habeas could provide a vehicle for challenging prison conditions remained unresolved when the PLRA was enacted in 1996.[3]

In light of that uncertainty as to the scope of habeas, the drafters of the PLRA made § 3626 applicable to all civil challenges to prison conditions, whether styled as § 1983 actions or habeas corpus proceedings. And they used language borrowed from *Preiser* to underscore that § 3626's restrictions did not apply to habeas proceedings challenging the "fact or duration" of confinement. § 3626(g)(2); *see also Preiser*, 411 U.S. at 500. Absent that clarification, § 3626's discussion of "prisoner release order[s]" could otherwise call to

[3] Indeed, "whether [detainees] might be able to challenge their confinement conditions via a petition for a writ of habeas corpus" remained unresolved well past the time the PLRA was enacted. *See, e.g.*, *Ziglar v. Abbasi*, 582 U.S. 120, 144 (2017) (noting that Court had "left open the question").

mind core habeas challenges and engender confusion. *See* §§ 3626(a)(3), (g)(4).[4]

Against the historical backdrop of *Preiser*, Congress's exclusion from § 3626 of "habeas corpus proceedings challenging the fact or duration of confinement in prison" is best understood as implying the inclusion of habeas challenges to *conditions of confinement*—not, as the State suggests (OB19-20), the inclusion of § 1983 challenges to the fact or duration of confinement, a category that Congress likely did not have in mind. *See Preiser*, 411 U.S. at 500 ("[W]hen a state prisoner is

[4] Some courts have suggested that the entire reason for the habeas clause in § 3626 is to clarify that the discussion of "prisoner release order[s]" is not intended to extend § 3626 to habeas proceedings—which typically are excluded from the category of "civil actions" for purposes of the PLRA. *See, e.g.*, *Santana v. United States*, 98 F.3d 752, 755 (3d Cir. 1996), *as amended* (Nov. 14, 1996) (suggesting that "Congress felt compelled" to "distinguish between prison release orders and habeas proceedings," and so included the habeas clause in § 3626(g)(2) even though habeas proceedings typically are not viewed as "civil actions" for purposes of the PLRA); *Anderson v. Singletary*, 111 F.3d 801, 805-06 (11th Cir. 1997) (similar); *see also Davis v. Fechtel*, 150 F.3d 486, 488 (5th Cir. 1998) (not addressing § 3626, but observing that habeas proceedings generally "are not 'civil actions' for the purposes of the PLRA"). That analysis of § 3626(g)(2)'s habeas clause is equally fatal to the State's interpretation. If the habeas clause is merely a further clarification of the scope of § 3626 rather than an exclusion of actions that would otherwise be covered, it certainly does not imply that § 1983 actions challenging the fact or duration of confinement are covered.

challenging the very fact or duration of his physical imprisonment, … his sole federal remedy is a writ of habeas corpus.”).[5]

Simply put, what Congress had in mind when drafting § 3626 were challenges to prison conditions that would result in federal courts monitoring every aspect of prison life—not challenges to unconstitutional overdetention. When Senator Abraham addressed the PLRA's restrictions on “court-ordered remedies in prison conditions cases,” he spoke of judicial decrees in Michigan that resulted in federal courts monitoring “how warm the food is,” “how bright the lights are,” “whether there are electrical outlets in each cell,” “whether windows are inspected and up to code,” whether prisoners' hair is “cut only by licensed barbers,” and whether “air and water temperatures are comfortable.” 152 Cong. Rec. S14419 (Sep. 27, 1995). The injunctive

[5] Indeed, § 1983 overdetention claims occupy a unique position: They are unlike conditions claims, in that they “go[] directly to the constitutionality of [the] physical confinement itself.” *Preiser*, 411 U.S. at 489. But they also are distinguishable from the types of “fact or duration” of confinement challenges brought through habeas in that they do *not* “seek[] either immediate release from that confinement or the shortening of its duration.” *Id.*; *see also McNeal v. LeBlanc*, 90 F.4th 425, 430 (5th Cir.), *cert. denied*, 145 S. Ct. 266 (2024) (explaining that a plaintiff in a § 1983 overdetention challenge “merely challenges his overdetention, not the underlying conviction or sentence”).

relief in this case did not stem from complaints about prison conditions like these—it stemmed from an action regarding the very right to be free and not in prison when there is no legal authority justifying confinement. And the relief that was ordered is aimed at securing and protecting that right.

For all of these reasons, Plaintiffs' action challenging their unconstitutional overdetention is not a "civil action with regard to prison conditions" within the meaning of § 3626. Thus, § 3626's automatic stay provision was never triggered, and the limited path to appellate jurisdiction for denials of § 3626's automatic stay of injunctive relief does not apply here. *See* 18 U.S.C. §§ 3626(b), (e); *see also* OB21 (conceding that "a motion to terminate prospective relief 'shall operate as a stay' of that relief" only "[w]hen the PLRA's prospective-injunction limitations apply").

**2. If the PLRA applies, this Court should remand for the District Court to determine whether termination of the consent decree is appropriate under 18 U.S.C. § 3626(b)(3).**

If this Court were to find that the PLRA applies and the automatic stay provision is triggered, then the proper course would be to remand for the District Court to determine whether the PLRA

requires the consent decree to be terminated. The PLRA provides that where § 3626 is applicable, and an intervenor seeks the termination of prospective relief, such "[p]rospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation." 18 U.S.C. § 3626(b)(3). At least two courts of appeals have interpreted § 3626(b)(2)'s termination provision together with § 3626(b)(3) "to mean that, when the plaintiffs so request in response to a defendant's motion for termination, the district court must allow the plaintiffs an opportunity to show current and ongoing violations of their federal rights." *Benjamin v. Jacobson*, 172 F.3d 144, 166 (2d Cir. 1999); *see also Loyd v. Ala. Dep't of Corr.*, 176 F.3d 1336, 1342 (11th Cir. 1999) (characterizing the refusal of such a hearing as an abuse of discretion).

Here, Plaintiffs requested such a hearing in the District Court, *see* ROA.2151-53, and the only reason the hearing did not take place was the District Court's conclusion that the PLRA does not apply. If this

Court disagrees with the District Court's conclusion and exercises its appellate jurisdiction under the PLRA to require a stay of the consent decree, it should remand for the District Court to apply the PLRA and determine whether termination of the consent decree is appropriate under the PLRA's termination provision. *E.g.*, *Castillo v. Cameron Cnty.*, 238 F.3d 339, 355 (5th Cir. 2001) (remanding "to hold an evidentiary hearing on whether the relief meets the requirements of § 3626(b)(3)").

Indeed, even the State concedes that if the PLRA applies, the District Court, on remand, should have an opportunity to make "written findings based on the record under § 3626(b)(3)." OB23.

### B. There is no jurisdiction under 28 U.S.C. § 1292(a)(1).

The State likewise fails to establish appellate jurisdiction under 28 U.S.C. § 1292(a)(1), the terms of which are not satisfied here. And even if the District Court's handling of the State's motion to dissolve the injunction were somehow reviewable at this stage, the District Court did not abuse its discretion when it took the State's motion under submission pending the Louisiana Supreme Court's resolution of certified questions of state law.

**1.** The State is incorrect in its assertion that even if the PLRA does not apply, § 1292(a)(1) would give this Court appellate jurisdiction to "independently dispose of the case on Rule 60 grounds." OB23. The District Court explained that the State's "Motion to Terminate or Dissolve the Consent Decree" would be "taken under submission pending the resolution of [certified] questions" by the Louisiana Supreme Court. ROA.2336; *see also* ROA.2347 (Certification Order) (noting that the District Court was "retain[ing] jurisdiction over this matter pending the Louisiana Supreme Court's response"). That decision is neither formally nor functionally "a refusal to dissolve the injunction," *contra* OB4, and so 28 U.S.C. § 1292(a)(1) does not provide for appellate review.

"Section 1292(a)(1) is a 'limited exception to the final-judgment rule' that is construed 'narrowly.'" *Rey v. LCMC Health Care Partners, L.L.C.*, 181 F.4th 574, 576 (5th Cir. 2026) (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981)). This Court accordingly "appl[ies] the exception 'gingerly lest a floodgate be opened that permits immediate appeal over too many nonfinal orders.'" *Id.* (quoting *Anderson v. Hutson*, 114 F.4th 408, 415 (5th Cir. 2024)). Thus, while

"interlocutory orders that 'explicitly grant or deny injunctive relief'" are immediately appealable under § 1292(a)(1), *Anderson*, 114 F.4th at 415 (quoting *Sherri A.D. v. Kirby*, 975 F.2d 193, 203 (5th Cir. 1992)), the Court has determined that "a greater showing is required before a party may take an interlocutory appeal of an order having only the 'practical effect'" of granting or denying injunctive relief, *id.* (quoting *Carson*, 450 U.S. at 84). "The party must show, first, that the order 'might have a serious, perhaps irreparable, consequence,' and, second, that it may be 'effectually challenged only by immediate appeal.'" *Id.* (quoting *Carson*, 450 U.S. at 84). If these two conditions are not met, "the general congressional policy against piecemeal review will preclude interlocutory appeal." *Carson*, 450 U.S. at 84.

Here, however, the District Court's order does not even have the "practical effect" of refusing to dissolve an injunction, and so the State's attempt to invoke § 1292(a)(1) fails at the threshold. This Court's recent decision in *Navy v. School Board of St. Mary Parish*, 166 F.4th 550 (5th Cir. 2026), is instructive. In *Navy*, a school board subject to a consent decree sought interlocutory review of a district court order, arguing that the order "ha[d] the practical effect of continuing,

modifying, or refusing to dissolve the injunction." *Id.* at 555. This Court dismissed the appeal, because the order in question "[did] nothing but maintain the *status quo* with regard to the injunction," and the school board's motion to dissolve the injunction was still pending. *Id.* This Court explained that the "existence of the motion to dissolve, in and of itself, counsels against a finding that the [district court's order] had the practical effect of continuing, modifying, or denying the dissolution of the injunction because the district court will affirmatively speak on whether it will, in fact, deny the Board's motion to dissolve the injunction or allow the injunction to continue." *Id.*

That is precisely the situation here. In taking the State's motion under submission while the Louisiana Supreme Court decides the questions certified to it, the District Court's case-management order does not in effect deny the State's motion. *Cf. Amazon.com Servs. LLC v. NLRB*, 151 F.4th 221, 227 (5th Cir. 2025) (dismissing appeal for lack of jurisdiction and explaining that "'[a]ppeal cannot be achieved simply by asserting that the trial court has failed to act promptly as wished by a party seeking an injunction'" (quoting *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 535 (5th Cir. 2024))).

Because the District Court's order did not even have the practical effect of refusing to dissolve the injunction, this Court need not consider whether its heightened requirements for appealing from such orders are satisfied here. But if this Court nonetheless reaches that question, the answer is clear: The State failed even to argue that it "would suffer serious or irreparable consequences merely from waiting" until final resolution of the Rule 60(b) motion, or that the order can be challenged only by immediate appeal, and that failure is fatal to appellate jurisdiction. *Rey*, 181 F.4th at 578 (holding that, where the appellant had "not attempted to argue that [it] meet[s] either factor," "[t]hat is dispositive"); *see also Gould v. Control Laser Corp.*, 650 F.2d 617, 621 (5th Cir. Unit B 1981) (likewise treating appellant's failure to show that *Carson* factors are satisfied as dispositive of appellate jurisdiction).

Because neither the PLRA nor § 1292(a)(1)'s terms supply appellate jurisdiction here, the appeal should be dismissed in its entirety. "The [State's] challenges concerning Rule 60(b)(5), as well as any other points urged regarding the injunction, would properly be before this Court on any appeal of the district court's ruling on the motion to dissolve the injunction." *Navy*, 166 F.4th at 556.

**2.** Even if the District Court's case-management decision to take the State's motion to dissolve the injunction under submission were somehow reviewable at this stage, the District Court did not abuse its discretion by taking the motion under submission pending the Louisiana Supreme Court's resolution of the certified questions. Courts, including this one, routinely hold proceedings in abeyance while a state court is resolving certified questions. *See, e.g.*, *Am. Pearl Grp., L.L.C. v. Nat'l Payment Sys., L.L.C.*, No. 23-10804, 2024 WL 4132409, at *11 (5th Cir. Sept. 10, 2024) (holding appeal in abeyance "pending response from the Supreme Court of Texas" on question certified to it); *Phillips v. Pembroke Real Est., Inc.*, 459 F.3d 128, 132 (1st Cir. 2006) (noting that "district court certified" a question of state law "to the Massachusetts Supreme Judicial Court ('SJC'), and the federal appeals [which had been filed under § 1292(a)(1)] were stayed pending the SJC's resolution of this state law question").

Indeed, declining to await a state court's pending resolution of state-law questions would raise federalism concerns. *Cf. Gray Line Motor Tours, Inc. v. City of New Orleans*, 498 F.2d 293, 298-99 (5th Cir. 1974) (explaining, in abstention context, that "postpon[ing a] decision"

pending a state court's resolution of state-law questions is "consistent with the requirements of federalism"). The Louisiana Supreme Court chose to accept the certification, received briefing and heard argument on an expedited basis, and may issue its decision any day. Courts of appeals do not review certification decisions directly, and for good reason. *See* Certification to State Court, 17A *Fed. Prac. & Proc. Juris.* § 4248 (3d ed. 2026) ("An order by a district court certifying questions to a state court is not appealable to a court of appeals. It is not a final judgment, nor does it fall within the collateral-order doctrine.")

Contrary to the State's position (OB25), the District Court did not act improperly in deciding to certify state-law questions that were central to the State's Rule 60(b) argument. Indeed, the State misdescribes the consent decree as terminating upon any "change in … state law applicable to immigration detainers," OB27 (quoting ROA.1383). The decree instead provides that the new OPSO policy "has permanent effect, absent a change in federal or state law applicable to immigration detainers." ROA.1383. That language does not mandate automatic dissolution when there is a change in federal or state law applicable to immigration detainers, which could be as minimal as a

change to the form used by ICE to request an immigration detainer. Rather, it leaves the door open to modifying rather than terminating the consent decree in those circumstances. *Cf. Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 393 (1992) (requiring that "a party seeking modification of a consent decree must establish that a significant change in facts or law warrants revision of the decree").

In sum, even if appellate jurisdiction existed here, it was well within the discretion of the District Court to seek the Louisiana Supreme Court's views on Act 314's relationship to the consent decree and Act 314's constitutionality before determining whether that change in law warranted the wholesale termination of the consent decree that the State had requested.

## II. The State's Article III Argument Is Unavailing.

Because the State has not established jurisdiction over this appeal, it also cannot succeed in its late-breaking challenge to the District Court's jurisdiction. *See, e.g.*, *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 550 (5th Cir. 2008) ("We must first consider our own jurisdiction and then that of the district court."); *MS Tabea Schiffahrtsgesellschaft MBH & Co. KG v. Bd. of Comm'rs of Port of New*

*Orleans*, 636 F.3d 161, 164 (5th Cir. 2011) ("Before we address the district court's subject matter jurisdiction we must first determine our own."); *Bordelon Marine, L.L.C. v. Bibby Subsea Rov, L.L.C.*, 685 F. App'x 330, 336 n.6 (5th Cir. 2017) (where appellate jurisdiction was found to be lacking, "express[ing] no opinion as to … the underlying jurisdictional issues," and instead "leaving the district court to address these matters as necessary").

In any event, as this Court has observed, the usual Article III analysis works differently in cases involving continuing jurisdiction over consent decrees or permanent injunctions. *See Cooper v. Texas Alcoholic Beverage Commission*, 820 F.3d 730 (5th Cir. 2016). In *Cooper*, the Court explained that adversity is not necessarily required for an Article III case or controversy to exist "where a court has entered a permanent injunction or some other equitable decree with prospective application," because "'federal courts have inherent equitable power to modify their own decrees.'" *Id.* at 736 (quoting *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 436 (5th Cir.

2011)).[6] The Court thus concluded that a "live case or controversy" existed in a case involving permanent injunctive relief although the case was not a class action and "[t]he original plaintiffs ha[d] not appeared and may no longer possess any direct stake in the outcome of [the] proceeding." *Id.* at 736.

"[A]ssuming the [State] wishes to pursue the issue" of whether a live case or controversy exists, it can do so in the District Court where "the focus … shall be not on the law of standing as a jurisdictional concept but on the equitable standards embodied in Rule 60(b)(5)." *O'Sullivan v. City of Chicago*, 396 F.3d 843, 868 (7th Cir. 2005). When the District Court undertakes that analysis in the first instance, Plaintiffs can present evidence to counter the State's bare assertion that there is no "ongoing or future risk of harm to the Plaintiffs," OB28, and other affected parties—such as the organizations granted enforcement rights under the consent decree, *see* ROA.1388-90—may see fit to intervene, *cf. Cooper*, 820 F.3d at 736 (describing intervention by new

---

[6] The Seventh Circuit has similarly explained that arguments about standing or mootness within the context of consent decree proceedings "ignore[] the procedural posture of [the] case." *O'Sullivan v. City of Chicago*, 396 F.3d 843, 867 (7th Cir. 2005).

parties as sufficient, though not necessary, to allay mootness concerns regarding a consent decree).

## CONCLUSION

Because this Court lacks jurisdiction to hear this interlocutory appeal at this time, it should dismiss the appeal without prejudice to the parties' ability to appeal from a final decision deciding the State's motion to terminate or dissolve the consent decree.

Respectfully submitted,

*/s/Elise M. Baranouski*
Elise M. Baranouski
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Ave., NW
Washington, DC 20037
(202) 339-8400
ebaranouski@orrick.com

Anisha S. Dasgupta
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

Bridget Pranzatelli
NATIONAL IMMIGRATION PROJECT
1763 Columbia Road NW, Ste. 175
Washington, DC 20009

Mary C. Yanik
TULANE LAW CLINICS
6329 Freret Street, Ste. 130
New Orleans, LA 70118

Cassandra Charles
NATIONAL IMMIGRATION LAW CENTER
1121 14th Street, NW
Washington, DC 20005

Jeremy Jong
AL OTRO LADO
634 S. Spring Street, Ste. 504
Los Angeles, CA 90014

*Counsel for Plaintiffs-Appellees Mario Cacho and Antonio Ocampo*

August 28, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a) because this brief contains 8,242 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/Elise M. Baranouski*
Elise M. Baranouski
*Counsel for Plaintiffs-Appellees Mario Cacho and Antonio Ocampo*

## CERTIFICATE OF SERVICE

On August 28, 2026, this brief was served via CM/ECF on all registered counsel, which will automatically send an electronic notice of filing to all counsel of record.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/Elise M. Baranouski*
Elise M. Baranouski
*Counsel for Plaintiffs-Appellees Mario Cacho and Antonio Ocampo*