No. 26-30101

IN THE

# United States Court of Appeals

FOR THE FIFTH CIRCUIT

MARIO CACHO; ANTONIO OCAMPO,

*Plaintiffs-Appellees,*

*v.*

SUSAN HUTSON, ORLEANS PARISH SHERIFF,

*Defendant,*

*and*

STATE OF LOUISIANA,

*Intervenor-Appellant.*

*Appeal from the United States District Court for the Eastern District of Louisiana*

# BRIEF OF LAW PROFESSORS MARGO SCHLANGER, ALEXANDER A. REINERT, ANDREA ARMSTRONG, AND LEE KOVARSKY AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES

Michael Ferrara
Damaris Hernández
Alexandra Kersley
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
212-763-0883

*Attorneys for* Amici Curiae

PHP (212) 719-0990
appeals@phpny.com

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made to enable the judges of this Court to evaluate any potential disqualification or recusal.

**Intervenor-Appellant**

| | |
|---|---|
| **State of Louisiana** | Zachary Faircloth<br>Jorge Benjamin Aguinaga |

**Plaintiffs-Appellees**

| | |
|---|---|
| **Mario Cacho** | Elise M. Baranouski<br>Anisha Sasheen Dasgupta<br>Orrick, Herrington & Sutcliffe LLP<br><br>Mary Catherine Yanik<br>Tulane Law Clinics<br><br>Cassandra Charles<br>National Immigration Law Center<br><br>Jeremy Jong<br>Al Otro Lado<br><br>Bridget Pranzatelli<br>National Immigration Project |
| **Antonio Ocampo** | Elise M. Baranouski |

Anisha Sasheen Dasgupta
Orrick, Herrington & Sutcliffe LLP

Mary Catherine Yanik
Tulane Law Clinics

Cassandra Charles
National Immigration Law Center

Jeremy Jong
Al Otro Lado

Bridget Pranzatelli
National Immigration Project

**Defendants**

**Susan Hutson, Former Orleans Parish Sheriff**

**Michelle Woodfork, Orleans Parish Sheriff**

**Amicus Curiae**

**Margo Schlanger**
**Alexander A. Reinert**
**Andrea Armstrong**
**Lee Kovarsky**

Michael Ferrara
Damaris Hernández
Alexandra Kersley
Hecker Fink LLP

/s/ Alexandra Kersley
Alexandra Kersley

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

**Page**

IDENTITY OF *AMICI* .......... 1

ARGUMENT .......... 3

I. The Text and Structure of 18 U.S.C. § 3626 Confirm That the Prospective Relief Provisions Do Not Apply to Suits Challenging the Fact or Duration of Detention .......... 4

II. The Legislative History Confirms That the Prospective Relief Provisions Do Not Apply to Overdetention Claims .......... 12

CONCLUSION .......... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdul-Hakeem v. Koehler*,
910 F.2d 66 (2d Cir. 1990) .......... 9

*Adams v. Ellis*,
197 F.2d 483 (5th Cir. 1951) .......... 16

*Alexander v. Hawk*,
159 F.3d 1321 (11th Cir. 1998) .......... 13

*Berwanger v. Cottey*,
178 F.3d 834 (7th Cir. 1999) .......... 20

*Booth v. Churner*,
206 F.3d 289 (3d Cir. 2000), *aff'd* 532 U.S. 731 (2001) .......... 5

*Brown v. Plata*,
563 U.S. 493 (2011) .......... 11, 13

*Cacho v. Gusman*,
No. 11-225, 2026 WL 456587 (E.D. La. Feb. 18, 2026) .......... 20

*Carson v. Johnson*,
112 F.3d 818 (5th Cir. 1997) .......... 9

*Castillo v. Cameron Cnty.*,
238 F.3d 339 (5th Cir. 2001) .......... 11, 12

*Clark v. State of Ga. Pardons & Paroles Bd.*,
915 F.2d 636 (11th Cir. 1990) .......... 8

*Corley v. United States*,
556 U.S. 303 (2009) .......... 6

*Davis v. Fechtel*,
150 F.3d 486 (5th Cir. 1998) .......... 12

*Freeman v. Francis*,
196 F.3d 641 (6th Cir. 1999) ........ 6

*Handberry v. Thompson*,
446 F.3d 335 (2d Cir. 2006) ........ 6

*Harris v. Garner*,
216 F.3d 970 (11th Cir. 2000) ........ 13

*Haynes v. Scott*,
116 F.3d 137 (5th Cir. 1997) ........ 12

*Krist v. Ricketts*,
504 F.2d 887 (5th Cir. 1974) ........ 9

*McCollum v. Miller*,
695 F.2d 1044 (7th Cir. 1982) ........ 9

*Ojo v. INS*,
106 F.3d 680 (5th Cir. 1997) ........ 12

*Porter v. Nussle*,
534 U.S. 516 (2002) ........ 10

*Preiser v. Rodriguez*,
411 U.S. 475 (1973) ........ 7, 8

*Ruiz v. Estelle*,
503 F. Supp. 1265 (S.D. Tex. 1980) ........ 16

*Ruiz v. United States*,
243 F.3d 941 (5th Cir. 2001) ........ 20

*Serio v. Members of La. State Bd. of Pardons*,
821 F.2d 1112 (5th Cir. 1987) ........ 8

*Seth v. McDonough*,
461 F. Supp. 3d 242 (D. Md. 2020) ........ 6

*Sisk v. CSO Branch*,
974 F.2d 116 (9th Cir. 1992) ........ 8

*Smith v. Zachary*,
255 F.3d 446 (7th Cir. 2001) ........ 5

*Ward by his Next Friend v. Muth*,
No. 1:16-cv-00917, 2026 WL 1974743
(W.D. Tex. July 7, 2026) ........ 6

*Ysleta Del Sur Pueblo v. Texas*,
596 U.S. 685 (2022) ........ 6

**Statutes**

18 U.S.C. § 3626 ........ 4

18 U.S.C. § 3626(a)(1) ........ 4, 11

18 U.S.C. § 3626(a)(3) ........ 3, 10, 11

18 U.S.C. § 3626(b)(3) ........ 20

18 U.S.C. § 3626(g)(2) ........ *passim*

18 U.S.C. § 3626(g)(4) ........ 11

28 U.S.C. § 1915(a)(1) ........ 13

42 U.S.C. § 1983 ........ 7, 8, 9, 10

Omnibus Consolidated Rescissions and Appropriations Act
of 1996, Pub. L. No. 104–134, 110 Stat. 1321, (1996) ........ 14

Prison Conditions Litigation Reform Act,
S. 1275, 104th Cong. (Sept. 26, 1995) ........ 14

**Rules**

Fed. R. App. P. 29(a)(4)(E) ........ 1

## Other Authorities

Crime Prevention and Family Protection Act of 1996, H.R. 2992, 104th Cong. tit. II, subtits. B (Stopping Abusive Prisoner Lawsuits) & C (Stop Turning Out Prisoners) (Feb. 29, 1996) .......... 14

Criminal Correction and Victim Assistance Act of 1996, H.R. 3206, 104th Cong. § 5 (Stopping Abusive Prisoner Lawsuits) (Mar. 29, 1996) .......... 14

Civil Justice Fairness Act of 1995, S. 672, 104th Cong. tit. V (Control of Abusive Prisoner Litigation Practices) (Apr. 4, 1995) .......... 13

H.R. Rep. No. 104–21 (1995) .......... 14, 15

Local Law Enforcement Enhancement Act of 1995, S. 816, 104th Cong. § 102 (Stopping Abusive Prisoner Lawsuits), §103 (Appropriate Remedies for Prison Conditions) (May 17, 1995) .......... 14

Martin A. Schwartz, *The* Preiser *Puzzle: Continued Frustrating Conflict Between the Civil Rights and Habeas Corpus Remedies for State Prisoners*, 37 DePaul L. Rev. 85, 123–28 (1988) .......... 8

Prison Litigation Reform Act of 1995, 141 Cong. Rec. S14,413 .......... 17, 18

Prison Litigation Reform Act of 1995, S. 866, 104th Cong. (May 25, 1995) .......... 14

Prison Litigation Reform Act of 1995, S. 1279, 104th Cong. (Sept. 27, 1995) .......... 14, 17

*Prison Reform: Enhancing the Effectiveness of Incarceration: Hearing on S. 3, S. 38, S. 400, S. 866, S. 930, and H.R. 667 Before the S. Comm. on the Judiciary*, 104th Cong. 24 (1995) .......... 9, 10, 14, 15, 16

Prisoner Lawsuit Efficiency Act of 1995,
H.R. 2468, 104th Cong. (Oct. 11, 1995) ........ 14

Stop Turning Out Prisoners Act,
S. 400, 104th Cong. (Feb. 14, 1995) ........ 13

Taking Back Our Streets Act of 1995,
H.R. 3, 104th Cong. tit. VII (Jan. 4, 1995) ........ 13

Violent Crime Control and Law Enforcement Improvement Act of 1995,
S. 3, 104th Cong. § 103 (Civil Rights of Institutionalized Persons) (Jan. 4, 1995) ........ 13

Violent Criminal Incarceration Act of 1995,
H.R. 667, 104th Cong. tit. II (Stopping Abusive Prisoner Lawsuits) & tit. III (Stop Turning Out Prisoners) (Jan. 25, 1995) ........ 13

## IDENTITY OF *AMICI*[1]

*Amici* are law professors with substantial expertise in the Prison Litigation Reform Act ("PLRA"). Margo Schlanger is the Wade H. and Dores M. McCree Collegiate Professor of Law at the University of Michigan. She is an authority on civil and criminal detention and the lead author of *Incarceration and the Law* (West Academic Publishing, 2020), and dozens of articles about the law governing prisons and jails. Her scholarship on the PLRA includes articles in the *Harvard Law Review*, *New York University Law Review*, *Journal of Empirical Legal Studies*, *Case Western Reserve Law Review*, *Annals of the American Academy of Political and Social Science*, *U.C. Irvine Law Review*, and *University of Miami Law Review*, among others.

Alexander A. Reinert is the Max Freund Professor of Litigation & Advocacy at Cardozo Law. He is an authority on civil rights law, whose work has focused on law governing incarceration. His academic work, which includes a focus on the law of prisons and jails, has appeared in

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), *amici curiae* state that no counsel for a party authored this brief in whole or in part, and that no person other than amicus curiae, its members, or its counsel contributed money intended to fund preparing or submitting this brief. *Amici* received consent from all parties to submit this brief.

the *California Law Review*, *Journal of Empirical Legal Studies*, *Notre Dame Law Review*, *Northwestern University Law Review*, *Stanford Law Review*, *University of Pennsylvania Law Review*, and *University of Virginia Law Review*.

Andrea Armstrong is the Dr. Norman C. Francis Distinguished Professor of Law at Loyola University New Orleans College of Law and a 2023 MacArthur Fellow. She is a leading national expert on prison and jail conditions and is certified by the U.S. Department of Justice as a Prison Rape Elimination Act auditor. Her academic work, which focuses on the constitutional dimensions of prisons and jails, has been published in the *U.C. Irvine Law Review, Ohio State Law Journal*, *Harvard Civil Rights-Civil Liberties Law Review*, *Howard Law Journal*, *Louisiana Law Review*, *Seattle University Law Review*, *Stanford Law and Policy Review*, *University of St. Thomas Law Journal*, *Journal of Criminal Law and Criminology*, and *Annual Review of Public Health*, among others.

Lee Kovarsky is a Professor at The University of Texas at Austin School of Law, and a leading scholar of the death penalty and habeas corpus. He is the co-author of a leading case book on habeas corpus, and his work is forthcoming or has been published in the *California Law*

*Review*, *Chicago Law Review*, *Columbia Law Review, Cornell Law Review*, *Duke Law Journal*, *Harvard Law Review, Michigan Law Review*, *New York University Law Review*, *Stanford Law Review*, *Texas Law Review*, *Vanderbilt Law Review*, and *Virginia Law Review*.

This brief sets forth amici's understanding of the statutory text, structure, and legislative history of the PLRA as it bears on the question of whether this lawsuit is a "civil action with respect to prison conditions" within the meaning of 18 U.S.C. § 3626(g)(2).

## ARGUMENT

The PLRA's prospective relief provisions apply to claims concerning the conditions and quality of life in prison, not claims challenging the fact or duration of detention. The statutory text and structure make that distinction clear. Read in context, 18 U.S.C. § 3626(g)(2)'s reference to governmental actions affecting "the lives of persons confined in prison" concerns the circumstances of prison life, not the antecedent question of whether the government has lawful authority to continue confinement. The habeas corpus exception confirms rather than expands that boundary, clarifying that habeas corpus proceedings are not included in the scope of the prospective relief provisions. Section 3626(a)(3)'s

specialized framework for prisoner release orders likewise shows that when Congress intended to regulate release-related relief arising from prison conditions litigation, it did so expressly.

The legislative history confirms what is plain from the text: the prospective relief provisions do not apply to overdetention claims. Congress repeatedly focused on "frivolous" lawsuits concerning the quality of life in prison and federal judge "micromanagement" of prison operations. The legislative record does not similarly identify challenges to the legality or duration of detention as part of the problem the prospective relief provisions were designed to address. The statutory text, structure, and legislative history thus point to the same conclusion: the PLRA's prospective relief restrictions do not reach this lawsuit.

## I. The Text and Structure of 18 U.S.C. § 3626 Confirm That the Prospective Relief Provisions Do Not Apply to Suits Challenging the Fact or Duration of Detention

The plain language of § 3626(g)(2), read in context, concerns claims relating to the quality of life in prison. Section 3626(a)(1) of the PLRA limits the prospective relief a court may grant "in any civil action with respect to prison conditions." Section 3626(g)(2), in turn, defines a "civil action with respect to prison conditions" as "any civil proceeding arising

under Federal law with respect to" (1) "the conditions of confinement," or (2) "the effects of actions by government officials on the lives of persons confined in prison." Intervenor-Appellant does not argue that plaintiffs' claims are "with respect to . . . conditions of confinement." Opening Br. of Intervenor-Appellant at 15–16. Instead, Intervenor-Appellant relies on the second clause of § 3626(g)(2): "the effects of actions by government officials on the lives of persons confined in prison." *Id.*

Read as a whole, the second clause of § 3626(g)(2) describes governmental conduct affecting a person's life in confinement—the conditions, treatment, and incidents of prison life. It does not describe a claim in which the alleged wrong is the government's continued confinement of a person whom it no longer has the legal authority to detain.

The decisions applying the second clause confirm that reading. In *Booth v. Churner*, 206 F.3d 289, 294–95 (3d Cir. 2000), *aff'd* 532 U.S. 731 (2001), the court understood the clause to encompass claims ranging from excessive force to a prison official's failure to make basic repairs in the prison, or intentional denial of food, heating, or medical attention. *See also Smith v. Zachary*, 255 F.3d 446, 449 (7th Cir. 2001) (excessive force);

*Freeman v. Francis*, 196 F.3d 641, 643–44 (6th Cir. 1999) (same); *Handberry v. Thompson*, 446 F.3d 335, 344 (2d Cir. 2006) (adequacy of educational and related services). The common feature is that each claim concerns what happens behind bars, not the validity of the government's legal basis to continue confinement. Consistent with that distinction, *Seth v. McDonough*, 461 F. Supp. 3d 242 (D. Md. 2020), concluded that § 3626(g)(2) did not apply to a challenge to "a purported policy of detaining individuals beyond the point at which they are legally entitled to release." *Id.* at 255 n.14. Other district courts have agreed, explaining that the clause "is plainly not applicable" to claims "challenging the constitutionality of . . . continued confinement." *Ward by his Next Friend v. Muth*, No. 1:16–cv–00917, 2026 WL 1974743, at *25 (W.D. Tex. July 7, 2026).

The State's reading of § 3626(g)(2) also violates the "longstanding canon[] of statutory construction" under which courts "must normally seek to construe Congress's work 'so that effect is given to all provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 698–99 (2022) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)). In defining "civil

action[s] with respect to prison conditions," Congress specifically set out two categories of civil proceedings: those challenging "the conditions of confinement," and those challenging "the effects of actions by government officials on the lives of persons confined in prison." Under the State's reading, however, "a civil action with respect to prison conditions" is simply any civil proceeding with respect to persons confined in prison. That interpretation renders much of Congress's work redundant by giving no effect to the limitations imposed by § 3626(g)(2).

The habeas corpus exception does not broaden the scope of § 3626(g)(2). Under § 3626(g)(2), civil actions with respect to prison conditions do "not include habeas corpus proceedings challenging the fact or duration of confinement in prison." The State contends that "[t]he existence of the habeas exclusion . . . supports the State's reading that § 1983 claims challenging confinement are within § 3626(g)(2)'s statutory definition." Opening Br. of Intervenor-Appellant at 19–20. That inference does not follow. Instead, the clearest reading of the habeas exception is that Congress did not intend for the PLRA's prospective relief provisions to apply to claims at the "core of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973).

That reading accords with the legal landscape against which Congress legislated. During the period when the PLRA was developed and enacted, the boundary between habeas corpus and § 1983 was contested. *See* Martin A. Schwartz, *The* Preiser *Puzzle: Continued Frustrating Conflict Between the Civil Rights and Habeas Corpus Remedies for State Prisoners*, 37 DePaul L. Rev. 85, 123–28 (1988) [hereinafter Schwartz]. In particular, the Supreme Court's decision in *Preiser* left open the questions of "whether habeas corpus and section 1983 might both be available . . . to contest conditions of confinement," and "whether the section 1983—habeas corpus issue should be resolved on the basis of the nature of a prisoner's claim, the specific relief requested, or both." Schwartz at 123, 127; *see also Preiser*, 411 U.S. at 499. Following *Preiser*, circuits took conflicting approaches to the question of what, if any, remedies could be provided short of release where prisoners raised claims touching on the fact or duration of their confinement,[2] and whether and

[2] *Compare Clark v. State of Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 638–39 (11th Cir. 1990) (holding claim for damages and an injunction based on denial of parole on improper grounds could be heard under § 1983 where the plaintiff did not seek actual release), *with Serio v. Members of La. State Bd. of Pardons*, 821 F.2d 1112, 1118 (5th Cir. 1987) (holding that no relief could be granted under § 1983 to individual prisoners regarding procedures affecting release dates; only "broad-based attacks on general rules and procedures" could be heard except via habeas petition after exhaustion of state remedies); *see also Sisk v. CSO Branch*, 974 F.2d 116, 117–18 (9th Cir. 1992)

when habeas proceedings might be available to challenge conditions of confinement.[3]

Congress added the habeas corpus exception in § 3626(g)(2) following the testimony of Associate Attorney General John R. Schmidt, who warned that without it, the prisoner release order provisions "would be exposed to constitutional challenge as precluding adequate remedy for a constitutional violation." *Prison Reform: Enhancing the Effectiveness of Incarceration: Hearing on S. 3, S. 38, S. 400, S. 866, S. 930, and H.R. 667 Before the S. Comm. on the Judiciary*, 104th Cong. 24 (1995) [hereinafter *Judiciary Hearing*] (statement of John R. Schmidt). Schmidt explained that because the statute permitted a prisoner release order only where "crowding is the primary cause of the deprivation," it would foreclose relief where overcrowding was "a substantial and independent, but

(citing conflicting decisions concerning disciplinary proceedings where good time credits had been taken).

[3] *Compare, e.g.*, *Abdul-Hakeem v. Koehler*, 910 F.2d 66, 69–70 (2d Cir. 1990) (holding that either habeas or § 1983 can be used to challenge the place of confinement); *McCollum v. Miller*, 695 F.2d 1044, 1046 (7th Cir. 1982) (holding "habeas corpus is a proper remedy for someone unlawfully confined in a Control Unit or the equivalent"); *Krist v. Ricketts*, 504 F.2d 887, 887–88 (5th Cir. 1974) (per curiam) (stating "it is proper for a district court to treat a petition for release from administrative segregation as a petition for a writ of habeas corpus") *with Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997) (holding challenge to administrative segregation was not properly brought as a habeas petition).

secondary, cause of" unconstitutional conditions. *Id.* He suggested that Congress could remedy this problem "through an interpretation of the notion of a covered 'civil action' . . . as not including habeas corpus proceedings in state or federal court which are brought to obtain relief from unconstitutional conditions of confinement." *Id.* He noted, however, that it would be risky to rely on an implicit, and thus "uncertain," habeas exclusion. *Id.*

In light of the uncertainty surrounding the scope of the habeas remedy, it is not surprising that Congress used the Supreme Court's language from *Preiser* to define the habeas corpus carveout. *See Porter v. Nussle*, 534 U.S. 516, 527 (2002) ("We found it telling that Congress, in composing the Magistrates Act, chose language that so clearly paralleled our *Preiser* opinion." (cleaned up)). That choice confirms that the exclusion tracks the habeas/§ 1983 boundary; it does not prove that all non-habeas claims challenging confinement are suits about "conditions of confinement" or "the effects of actions by government officials on the lives of persons confined in prison."

Section 3626(a)(3) further reinforces the distinction between remedies for prison conditions and relief from unlawful detention. That provision

imposes additional statutory limitations on "prisoner release order[s]," defined as "any order, including a temporary restraining order or preliminary injunctive relief, that has the purpose or effect of reducing or limiting the prison population, or that directs the release from or nonadmission of prisoners to a prison." 18 U.S.C. § 3626(g)(4); *see Brown v. Plata*, 563 U.S. 493, 512 (2011). Under § 3626(a)(3), prisoner release orders may be entered only by a three-judge court, and only upon a finding by clear and convincing evidence that crowding is the primary cause of the constitutional violation and that no other relief will remedy it. Prisoner release orders must also fulfill the requirements of § 3626(a)(1). *Brown*, 563 U.S. at 512. Section 3626(a)(3)'s focus on crowding reflects the purpose of that provision: to limit courts' ability to impose population caps in response to conditions claims. *Castillo v. Cameron Cnty.*, 238 F.3d 339, 348 (5th Cir. 2001).

The prisoner release order provision demonstrates that when Congress intended to address population reduction remedies arising from prison conditions litigation, it did so expressly and through a specialized statutory framework. That framework, which requires courts to find that crowding is a primary cause of the relevant violation, is directed to

conditions claims, not claims alleging that the government lacks legal authority to continue detaining particular individuals.

Plaintiffs are not "prisoner[s]" under the PLRA. *See Ojo v. INS*, 106 F.3d 680, 682–83 (5th Cir. 1997). But even if they were, this action is not a "civil action with respect to prison conditions" and does not fall within the scope of the PLRA's prospective relief provisions.

## II. The Legislative History Confirms That the Prospective Relief Provisions Do Not Apply to Overdetention Claims

The legislative history reinforces the conclusion drawn from the statutory text and structure. As this Court has explained, "the legislative history of the PLRA indicates that Congress was interested in discouraging suits involving frivolous challenges to prison conditions." *Davis v. Fechtel*, 150 F.3d 486, 490 (5th Cir. 1998).

This Court has relied on the legislative history of the PLRA to understand the scope of its provisions. *E.g.*, *Castillo*, 238 F.3d at 348 (citing the statement of Senator Dole to define prisoner release orders); *Davis*, 150 F.3d at 490 (relying on legislative history to hold the PLRA does not apply to habeas proceedings); *Haynes v. Scott*, 116 F.3d 137, 139 (5th Cir. 1997) (relying on the absence of legislative history suggesting that Congress intended to "curb [*in forma pauperis*] suits by

nonprisoners" to hold Section 1915(a)(1) applies only to prisoners); *see also Brown*, 563 U.S. at 577 nn.9 & 10 (Alito, J., dissenting) (relying on testimony from the Senate Judiciary Committee hearing and Senator Dole's floor statements to assess validity of prisoner release order); *Alexander v. Hawk*, 159 F.3d 1321, 1324–25 (11th Cir. 1998) (relying on floor statements to hold PLRA applies to both state and federal prisoners).[4]

The legislative record consistently concerns two related problems: frivolous prisoner litigation about conditions of confinement, and federal court micromanagement of prison operations to ameliorate conditions. It contains no mention of overdetention claims as part of the problem Congress sought to address.

The PLRA was introduced in 1995 through several pieces of legislation[5] and enacted in 1996 as a rider to an omnibus appropriations

---

[4] Statements from the "architects of the PLRA"—Senators Bob Dole, Jon Kyl, Orrin Hatch, Kay Bailey Hutchison, and Spencer Abraham—are particularly probative of "Congress' concern and intent." *See Harris v. Garner*, 216 F.3d 970, 977 & n.5 (11th Cir. 2000) (en banc).

[5] Violent Crime Control and Law Enforcement Improvement Act of 1995, S. 3, 104th Cong. § 103 (Civil Rights of Institutionalized Persons) (Jan. 4, 1995); Taking Back Our Streets Act of 1995, H.R. 3, 104th Cong. tit. VII (Jan. 4, 1995); Violent Criminal Incarceration Act of 1995, H.R. 667, 104th Cong. tit. II (Stopping Abusive Prisoner Lawsuits) & tit. III (Stop Turning Out Prisoners) (Jan. 25, 1995); Stop Turning Out Prisoners Act, S. 400, 104th Cong. (Feb. 14, 1995); Civil Justice Fairness Act of 1995,

bill. Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104–134, 110 Stat. 1321, 1321–66–70 (1996). Supporters described the legislation as a response to "a flood of litigation under the [E]ighth [A]mendment challenging prison conditions." *Judiciary Hearing* at 26 (statement of William P. Barr).

In February 1995, the House Committee on the Judiciary reported H.R. 667—the precursor to the PLRA's prospective relief provisions—out of committee. H.R. Rep. No. 104–21, at 5–6 (1995). The report explained that the prospective relief provisions were intended to address "federal court-imposed prison population caps" in "prison conditions suit[s]." *Id.* at 8. The federal courts, the Committee noted, had "used these consent decrees to intrude into a state criminal justice system and seriously

---

S. 672, 104th Cong. tit. V (Control of Abusive Prisoner Litigation Practices) (Apr. 4, 1995); Local Law Enforcement Enhancement Act of 1995, S. 816, 104th Cong. § 102 (Stopping Abusive Prisoner Lawsuits), §103 (Appropriate Remedies for Prison Conditions) (May 17, 1995); Prison Litigation Reform Act of 1995, S. 866, 104th Cong. (May 25, 1995); Prison Conditions Litigation Reform Act, S. 1275, 104th Cong. (Sept. 26, 1995); Prison Litigation Reform Act of 1995, S. 1279, 104th Cong. (Sept. 27, 1995); Prisoner Lawsuit Efficiency Act of 1995, H.R. 2468, 104th Cong. (Oct. 11, 1995); Crime Prevention and Family Protection Act of 1996, H.R. 2992, 104th Cong. tit. II, subtits. B (Stopping Abusive Prisoner Lawsuits) & C (Stop Turning Out Prisoners) (Feb. 29, 1996); Criminal Correction and Victim Assistance Act of 1996, H.R. 3206, 104th Cong. § 5 (Stopping Abusive Prisoner Lawsuits) (Mar. 29, 1996).

undermine the ability of the local justice system to dispense any true justice." *Id.* at 9.

On July 27, 1995, the Senate Judiciary Committee held a hearing on the provisions that became the PLRA. The testimony from that hearing makes clear that every Senator and every witness understood the PLRA to address two issues: (1) "frivolous" prisoner lawsuits about quality of life, and (2) federal court "micro-management" of prison operations to ameliorate conditions.

Senator Hatch opened the hearing by explaining that the prison system was "plagued by . . . the inappropriate utilization by Federal courts of population caps and intrusive micromanagement on State and local prisons, [and] the costly effects of frivolous inmate lawsuits filed in Federal court." *Judiciary Hearing* at 2 (statement of Senator Orrin G. Hatch). As examples of the "frivolous" lawsuits the PLRA was intended to reach, Senator Hatch cited cases in which prisoners sued officers for getting their Pinochle cards wet and failing to put a "cell back in a 'fashionable' condition" following a cell search. *Id.* at 3. Similarly, Senator Abraham warned that "prisoners, their lawyers, and unelected judges have replaced the people and their legislatures in controlling the

character of prison life." *Id.* at 5 (statement of Senator Spencer Abraham).

Senator Hutchison likewise focused on judicial orders regulating prison operations. Her testimony discussed the district court injunction in *Ruiz v. Estelle*, 503 F. Supp. 1265 (S.D. Tex. 1980), which regulated "population limits, restrictions on new facilities, use of force, access to the courts, and staffing" in Texas prisons. *Judiciary Hearing* at 11 (statement of Senator Kay Bailey Hutchison). Senator Hutchison promised that her proposed legislation "would prevent more *Ruiz* decisions." *Id.* at 12.

More directly, O. Lane McCotter, Executive Director of the Utah Department of Corrections, invoked a distinction between conditions claims and claims challenging the fact of confinement. In summarizing the history of federal court involvement in prison litigation, McCotter quoted the Fifth Circuit's decision in *Adams v. Ellis*, 197 F.2d 483 (5th Cir. 1951), for the proposition that "[i]t is not the function of the courts to superintend the treatment and discipline of prisoners in penitentiaries, but only to deliver from imprisonment those who are illegally confined." *Judiciary Hearing* at 111 (statement of O. Lane McCotter). Thus, the

very authority invoked at the hearing before the Senate Committee on the Judiciary distinguished between claims about "the treatment and discipline of prisoners," which the PLRA was designed to constrain, and claims related to illegal confinement.

The same focus continued when Senators Dole, Hatch, Abraham, Hutchison, and other co-sponsors introduced S. 1279, the Prison Litigation Reform Act of 1995. 141 Cong. Rec. S14,413. Yet again, none of the bill's sponsors referenced claims challenging the fact of confinement. Instead, the sponsors agreed that the bill would reduce "frivolous" lawsuits related to the quality of life in prison and end federal court "micromanagement" of the nation's prisons. *Id.* at S14,418 (statement of Senator Hatch).

Senator Dole described the bill as addressing "the alarming explosion in the number of frivolous lawsuits filed by State and Federal prisoners." *Id.* at S14,413. He cited grievances such as "insufficient storage locker space, a defective haircut by a prison barber, the failure of prison officials to invite a prisoner to a pizza party for a departing prison employee, and yes, being served chunky peanut butter instead of the creamy variety." *Id.* Senator Dole explained that the second major part of the legislation

"establishes some tough new guidelines for Federal courts when evaluating legal challenges to prison conditions" and would "restrain liberal Federal judges who see violations of constitutional rights in every prisoner complaint and who have used these complaints to micromanage State and local prison systems." *Id.* at S14,414 (statement of Senator Dole).

Senator Abraham likewise focused on "the proper scope of court-ordered remedies in prison conditions cases." *Id.* at S14,419 (statement of Senator Abraham). He explained that "[i]n many jurisdictions, . . . judicial orders entered under Federal law have effectively turned control of the prison system away from elected officials accountable to the taxpayer, and over to the courts," citing a series of Michigan decrees giving federal courts the authority to monitor "how warm the food is; . . . how bright the lights are; . . . whether there are electrical outlets in each cell; . . . whether windows are inspected and up to code; . . . whether prisoners' hair is cut only by licensed barbers; and . . . whether air and water temperatures are comfortable." *Id.* In listing the remedies that would be prevented by the PLRA, neither Senator Abraham nor any

other supporter or opponent of the PLRA referenced claims challenging the fact or duration of confinement.

The legislative history is clear: supporters of the PLRA did not intend its prospective relief provisions to apply to overdetention claims, much less to claims brought by individuals who do not even qualify as "prisoners" under the statute. The legislative record is focused on litigation related to the quality of life in prison: "frivolous" suits about conditions, and federal court judges who "micromanaged" prison operations in order to ameliorate conditions. The absence of any mention of overdetention claims in the legislative history is consistent with the plain text of the statute, which limits the prospective relief provisions to claims related to life in prison, not the fact of imprisonment itself.

The State's contrary interpretation would have consequences far beyond this case. If "effects of actions by government officials on the lives of persons confined in prison" extends to challenges to the legal basis for confinement, then *any* non-habeas challenge to detention could become a "prison conditions" action simply because the plaintiff remains physically confined. Nothing in the text, structure, or legislative history supports that expansion of the PLRA. The Court should decline to adopt it.

## CONCLUSION

The PLRA's prospective relief provisions do not apply to claims that challenge the legal authority for, rather than the conditions of, confinement.[6]

---

[6] Under Section 3626(b)(3):

> Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

Here, the district court held that the PLRA was inapplicable to this lawsuit, and therefore did not make findings under Section 3626(b)(3). *See Cacho v. Gusman*, No. 11-225, 2026 WL 456587, at *10 (E.D. La. Feb. 18, 2026). If this Court disagrees, it should remand to the district court to permit it to consider whether findings should be made. *See*, *e.g.*, *Ruiz v. United States*, 243 F.3d 941, 952 (5th Cir. 2001) (remanding "for the district court to make the findings required under § 3626(b)(3) or to terminate the 1992 judgment"); *Berwanger v. Cottey*, 178 F.3d 834, 840 (7th Cir. 1999) (remanding for findings under Section 3626(b)(3)).

Dated: September 4, 2026

Respectfully submitted,

/s/ Alexandra Kersley
Michael Ferrara
Damaris Hernández
Alexandra Kersley
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
mferrara@heckerfink.com
dhernandez@heckerfink.com
akersley@heckerfink.com

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically with the Court's CM/ECF system on September 4, 2026. Service will be effectuated by the Court's electronic notification system upon all parties and counsel of record.

/s/ Alexandra Kersley
Alexandra Kersley

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Alexandra Kersley hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 4,271 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f), and complies with the typeface requirements and length limits of Rules 27, 29, and 32(a)(5)–(7) and the corresponding local rules.

/s/ Alexandra Kersley
Alexandra Kersley

*Counsel for Amici Curiae*