No. 26-30101

# In the United States Court of Appeals for the Fifth Circuit

MARIO CACHO; ANTONIO OCAMPO,
*Plaintiffs–Appellees,*

v.

SUSAN HUTSON, ORLEANS PARISH SHERIFF,
*Defendant,*

and

STATE OF LOUISIANA,
*Intervenor–Appellant.*

On Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:11-cv-225, Hon. Janis van Meerveld

## REPLY BRIEF OF INTERVENOR-APPELLANT

ELIZABETH B. MURRILL
Attorney General of Louisiana

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 421-4088

J. BENJAMIN AGUIÑAGA
Solicitor General

ZACHARY FAIRCLOTH
Principal Deputy Solicitor General

*Counsel for Intervenor-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

Under Fifth Circuit Rule 28.2.1, a certificate of interested persons is not required because Intervenor-Appellant is a governmental party.

*/s/ Zachary Faircloth*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................ ii

TABLE OF AUTHORITIES ........................................ iv

INTRODUCTION ........................................ 1

ARGUMENT ........................................ 4

I. THE PLRA GOVERNS THE CONSENT DECREE IN THIS CASE, AND THAT SETTLES BOTH APPELLATE JURISDICTION AND THE MERITS. ........ 4

A. The Consent Decree Is Prospective Relief Directed at Prison Officials' Actions Affecting Orleans Parish Prison Inmates. ........ 4

B. The PLRA's Coverage Turns on the Prospective Relief Itself, Not the Complaint that Plaintiffs Filed in 2011. ........ 8

II. THE CONSENT DECREE ALSO CANNOT SURVIVE THE CHANGE IN LOUISIANA LAW. ........ 13

CONCLUSION ........................................ 15

CERTIFICATE OF SERVICE ........................................ 17

CERTIFICATE OF COMPLIANCE ........................................ 18

# TABLE OF AUTHORITIES

## Cases

*Adkins v. Silverman*,
899 F.3d 395 (5th Cir. 2018) ........ 8

*Booth v. Churner*,
206 F.3d 289 (3d Cir. 2000) ........ 5, 7

*Chisom v. Louisiana,*
116 F.4th 309 (5th Cir. 2024) ........ 3, 13

*Cooper v. Tex. Alcoholic Beverage Comm'n*,
820 F.3d 730 (5th Cir. 2016) ........ 11

*Kramer v. Caruana*,
2026 WL 1101306 (N.D. Ill. Apr. 23, 2026) ........ 12

*Med. Ctr. Pharmacy v. Mukasey*,
536 F.3d 383 (5th Cir. 2008) ........ 6

*Miller v. French,*
530 U.S. 327 (2000) ........ 10

*Navy v. School Board of St. Mary Parish*,
166 F.4th 550 (5th Cir. 2026) ........ 13

*Ojo v. INS*,
106 F.3d 680 (5th Cir. 1997) ........ 7

*Parker v. Hooper*,
171 F.4th 736 (5th Cir. 2026) ........ 8, 9, 12

*Petteway v. Galveston Cnty.*,
111 F.4th 596 (5th Cir. 2024) ........ 8

*Ruiz v. United States*,
243 F.3d 941 (5th Cir. 2001) ........ 10

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) .......... 6

*Smith v. Sch. Bd. of Concordia Par.*,
906 F.3d 327 (5th Cir. 2018) .......... 10

*United States v. Hinds County Board of Supervisors*,
128 F.4th 616 (5th Cir. 2025) .......... 2, 10

*Ward v. Muth*,
2026 WL 1974743 (W.D. Tex. July 7, 2026) .......... 12

*Ward v. Muth*,
No. 26-50619 (5th Cir. Sept. 18, 2026) .......... 12

**Statutes**

18 U.S.C. § 3626 .......... passim

28 U.S.C. § 1292 .......... 4, 13

42 U.S.C. § 1997 .......... 12

La. R.S. 33:81 *et seq* .......... 13

## INTRODUCTION

Still today, the *Cacho* consent decree orders the Orleans Parish Sheriff when federal immigration officers may enter her jail, which inmates they may interview, who must be in the room when they do, what she may tell federal officers about the inmates in her custody, and when she must refuse a detainer. ROA.1393. It has governed those local prison officials for more than a decade and, by its own terms, has "permanent effect, absent a change in federal or state law applicable to immigration detainers." ROA.1383. If that is not a prospective injunction regulating "the effects of actions by government officials on the lives of persons confined in prison," 18 U.S.C. § 3626(g)(2), nothing is. And so it should have been automatically stayed more than nine months ago.

Plaintiffs' answer is that the Court should not look at the consent decree at all. On their telling, because Cacho and Ocampo sued in 2011 after the jail held them past their release dates in 2010 on immigration detainers, this is an overdetention case, and overdetention cases are per se outside the PLRA no matter what relief they produce. Red.Br.21–30. Wrong. Asked where the live controversy is after sixteen years, Plaintiffs can point only to the consent decree itself. Red.Br.39–41. Right on that

score. The only federal judicial business left in this case is a permanent injunction governing state prison officials and the State's motion to end it.

Nor does the "overdetention" label rescue Plaintiffs. Even measured by the 2011 complaint, this case involves relief this Court has already run through the PLRA. In *United States v. Hinds County Board of Supervisors*, 128 F.4th 616, 635 (5th Cir. 2025), the Court reviewed a consent decree's provisions on "over-detention, including imprisonment without a lawful basis for detention," under § 3626(b)(3) like any other prospective relief governing a state prison or its officials. So relief addressing unlawful detention is not, by nature, outside the PLRA. Whatever Plaintiffs call it, therefore, this is the "civil proceeding" § 3626 governs—which means the State's termination motion "operate[d] as a stay" of the decree thirty days after it was filed, § 3626(e)(2), and the order refusing to give that stay effect is appealable now, "regardless of how the order is styled," § 3626(e)(4).

The decree also cannot survive Act 314. It gives the policy "permanent effect" only "absent a change in federal or state law applicable to immigration detainers," ROA.1383, and the district court

agreed that Act 314 is exactly that, ROA.2335 n.17. The court then added two conditions of its own—namely, (1) that Act 314 also "apply" to the consent decree and (2) that it be adjudged in state court as "valid" under the Louisiana Constitution. ROA.2331-36. The State expects to prevail on the certified questions in the Louisiana Supreme Court. But certification was unnecessary because *Chisom v. Louisiana* forbids reading into a consent decree conditions absent from its "four corners." 116 F.4th 309, 318 (5th Cir. 2024) (en banc). Certification has therefore only prolonged a decree that § 3626(a)(1)(A) prohibited from the outset. *See* ROA.2325.

This consent decree has persisted long enough. The Court should hold that § 3626(e)(4) supplies appellate jurisdiction, and that the decree has been stayed by operation of law since December 7, 2025. And because the decree's own change-in-law condition has occurred—as the district court agreed—the Court should reverse and direct termination. At minimum, it should remand for the prompt § 3626(b)(3) determination Congress requires, with the stay in place.

# ARGUMENT

## I. THE PLRA GOVERNS THE CONSENT DECREE IN THIS CASE, AND THAT SETTLES BOTH APPELLATE JURISDICTION AND THE MERITS.

Plaintiffs and the State largely agree on what follows if the PLRA governs this consent decree. The State's termination motion "operate[d] as a stay" of the decree 30 days after it was filed, 18 U.S.C. § 3626(e)(2), and the district court's order rejecting that stay is appealable now because "[a]ny order staying, suspending, delaying, or barring the operation of the automatic stay" is appealable under 28 U.S.C. § 1292(a)(1) "regardless of how the order is styled." 18 U.S.C. § 3626(e)(4); *see* Blue.Br.21–23. So both appellate jurisdiction and the merits turn on one statutory question: Does the PLRA govern the prospective relief that remains in this case? It does.

### A. The Consent Decree Is Prospective Relief Directed at Prison Officials' Actions Affecting Orleans Parish Prison Inmates.

The PLRA's prospective-relief restrictions apply to any "[p]rospective relief in any civil action with respect to prison conditions." 18 U.S.C. § 3626(a)(1)(A); *see* § 3626(b)(2). Congress defined "civil action with respect to prison conditions" as "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in

prison," excluding only habeas proceedings "challenging the fact or duration of confinement." § 3626(g)(2). The second clause reaches relief directed at official actions that "affect[s] the lives of prisoners" by "mak[ing] their lives worse." *Booth v. Churner*, 206 F.3d 289, 294 (3d Cir. 2000); *see* Blue.Br.15–16 (collecting cases). The consent decree does exactly that.

The *Cacho* decree mandates a policy that requires any Orleans Parish Sheriff's Office employee to "decline all voluntary ICE detainer requests" except in specified circumstances; forbids officials from "initiat[ing] any immigration status investigation into individuals in OPSO custody" or "affirmatively provid[ing] information on an inmate's release date or address to ICE"; and dictates when ICE may interview a "subject inmate" or enter the "secure area of the Intake and Processing Center." ROA.1393. Absent a court order, "OPSO shall not allow ICE to conduct civil immigration status investigations at OPSO or otherwise interview an inmate before the detainee's first appearance." *Id.* Each of those injunctive provisions governs "the effects of actions by government officials on the lives of persons confined in prison." § 3626(g)(2).

Plaintiffs never answer the State's argument on its own terms. Nor do they defend the district court's reasoning—they call it a "passing observation," Red.Br.26; *but see* ROA.2327-30. And Plaintiffs' engagement with § 3626(g)(2)'s text occupies a single footnote. Red.Br.29 n.5. That leaves Amici to carry the statutory interpretation argument, which the State addresses first.

Start with the habeas carve-out. Amici, echoed by Plaintiffs in a footnote, read § 3626(g)(2)'s exclusion as confining the definition itself to "quality of life" claims and thus placing § 1983 overdetention claims outside the PLRA's definition of a "civil action with respect to prison conditions." Red.Br.29 n.5; *see* Professor.Br.7–10. That reading is mistaken twice over. *First*, it treats the exclusion as if it shrank the definition. But exclusions do the opposite because Congress excludes from a definition only what would otherwise fall within it. *See* Blue.Br.19–20 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)). *Second*, their reading expands the carve-out beyond its explicit terms. But when Congress excluded just "habeas corpus proceedings," § 3626(g)(2), it did not *sub silentio* exclude

certain § 1983 proceedings too, *see* Blue.Br.19–20 (citing *Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 406 (5th Cir. 2008)).

Amici next argue that the State's reading renders § 3626(g)(2)'s first clause redundant. Professor.Br.6–7. *Booth* answers that objection. Congress used "expansive and somewhat overlapping language," but the two clauses still have distinct cores. *Booth v. Churner*, 206 F.3d 289, 295 (3d Cir. 2000). The first concerns "the environment in which prisoners live, the physical conditions of that environment, and the nature of the services provided therein"—things like "cell overcrowding, poor prison construction, inadequate medical facilities, and incomplete law libraries." *Id.* at 294. The second reaches official actions that "do not naturally fall into this class" but "fit neatly" within the language following the "or," including excessive force and other decisions by prison officials affecting confined persons. *Id.* at 294. And this consent decree is a paradigmatic example of the second category: It regulates official conduct toward people in custody, not the jail's physical conditions. That is precisely the gap Congress filled with the second clause.

Amici's *Ojo* argument (at 12) fails because "the plaintiff's status as an incarcerated person" for purposes of the PLRA's *in forma pauperis*

provisions has nothing to do with whether this case is a "civil action with respect to prison conditions." *See* ROA.2182 (citing *Ojo v. INS*, 106 F.3d 680, 682–83 (5th Cir. 1997)). That is why Plaintiffs made that argument below, ROA.2148–49, yet abandoned it on appeal after the district court disagreed, ROA.2326 n.2.

Finally, Amici's account of the PLRA's legislative history confirms that Congress was concerned with "federal court micromanagement of prison operations." Professor.Br.12–19. The State agrees. *See Parker v. Hooper*, 171 F.4th 736, 750 (5th Cir. 2026) (en banc) (explaining that the PLRA was passed to "limit the oversight of state prisons by federal courts."). But it is unclear how that select legislative testimony limits the PLRA to only "'frivolous' suits about conditions," Professor.Br.19, especially when the text clearly says otherwise, *see Petteway v. Galveston Cnty.*, 111 F.4th 596, 607 (5th Cir. 2024) ("[W]here a statute's text is clear, courts should not resort to legislative history." (quoting *Adkins v. Silverman*, 899 F.3d 395, 403 (5th Cir. 2018))).

### B. The PLRA's Coverage Turns on the Prospective Relief Itself, Not the Complaint that Plaintiffs Filed in 2011.

Plaintiffs cannot escape the PLRA by asking the Court to disbelieve its lying eyes. They recite several of the decree's mandates in their

Background, *see* Red.Br.10–11, but their PLRA argument never grapples with them, *see* Red.Br.30 (arguing that the decree "stemmed from an action regarding the very right to be free"). Instead, they ask the Court to classify this case as an "overdetention challenge" based on a few allegations in the 2011 complaint and deem it outside the PLRA's reach altogether. Red.Br.22–30. That is not how the statute works.

The PLRA was passed to "limit the oversight of state prisons by federal courts." *Parker*, 171 F.4th at 750. "To eliminate federal court interference with state and local prison management, the PLRA 'establishe[d] standards for the entry and termination of prospective relief in civil actions challenging prison conditions.'" *Id.* Perhaps obviously then, injunctive "mandate[s]" of federal courts quality as "relief" under the PLRA—that is, "all relief in any form that may be granted or approved by the court...." *Id.* at 751 (quoting 18 U.S.C. § 3626(g)(9)). And "prospective relief," in turn, is "all relief other than compensatory monetary damages." § 3626(g)(7). It follows that "[e]very mandate" governing prison operations is necessarily relief governed by the PLRA and must "pass muster under the needs-narrowness-

intrusiveness provision that is the PLRA's cornerstone." *Parker*, 171 F.4th at 750.

When federal courts are weighing the "[a]ppropriate remedies with respect to prison conditions," § 3626, the natural place to start is with the remedies themselves. That is how the Supreme Court approached the statute in *Miller v. French*, explaining that the PLRA "restricted courts' authority to issue and enforce prospective relief *concerning prison conditions*" and requires existing relief unsupported by the statutory findings to cease. 530 U.S. 327, 347 (2000) (emphasis added). That remedial focus makes especially good sense for "a consent decree," which "can sweep more broadly than can other forms of court-ordered relief." *Smith v. Sch. Bd. of Concordia Par.*, 906 F.3d 327, 335 (5th Cir. 2018).

Nor is that novel. This Court has already applied that PLRA principle to a consent decree containing an "Over-Detention" provision. In *United States v. Hinds County Board of Supervisors*, it held that § 3626(b)(3)'s "need-narrowness-intrusiveness" findings "must be particularized 'on a provision-by-provision basis.'" 128 F.4th 616, 626 (5th Cir. 2025) (quoting *Ruiz v. United States*, 243 F.3d 941, 950 (5th Cir. 2001)). A court must therefore "consider each provision of the consent

decree in light of the current and ongoing constitutional violations, if there are any, and determine which aspects of the decree remain necessary to correct those violations." *Id.* (quoting *Ruiz*, 243 F.3d at 950–51). Accordingly, under the heading "Over-Detention," this Court considered "the injunction's provisions on over-detention, including imprisonment without a lawful basis for detention," and concluded: "we affirm the district court's decision to retain the provisions regarding over-detention." *Id.* at 635. That is how § 3626 works in the face of a consent decree, and it cannot be squared with Plaintiffs' categorical theory that prospective relief addressing "overdetention" necessarily falls outside the statute.

Plaintiffs' own Article III response confirms the point. The State pointed out that the only two Plaintiffs left OPSO custody sixteen years ago and that no class was certified. Blue.Br.27–28. Plaintiffs identify no continuing personal stake for Cacho or Ocampo and, instead, say that the district court had "Article III jurisdiction to administer consent decrees," Red.Br.3, and "inherent equitable power to modify [its] own decrees," Red.Br.40 (quoting *Cooper v. Tex. Alcoholic Beverage Comm'n*, 820 F.3d 730, 736 (5th Cir. 2016)). Exactly. Nothing about Cacho's 164 days or

Ocampo's 91 days in 2010 is before the district court or has been for over a decade. What is before it is a consent decree with "permanent effect" over officials at a local jail. ROA.1383. That prospective injunction makes this a "civil action with respect to prison conditions," § 3626(g)(2), to which the PLRA's provisions apply.

Plaintiffs' district-court cases only underscore the need to correct the decision below expeditiously. *See* Red.Br.22–24. In April, the Northern District of Illinois expanded on *Cacho* to hold "the PLRA doesn't apply" for purposes of exhausting administrative remedies under 42 U.S.C. § 1997e(a) when a plaintiff "challenges the fact of his confinement, not the conditions of it." *Kramer v. Caruana*, 2026 WL 1101306, at *6 (N.D. Ill. Apr. 23, 2026). And the Western District of Texas followed suit, declaring the PLRA "plainly not applicable" again based on *Cacho*. *See Ward v. Muth*, 2026 WL 1974743, at *25 (W.D. Tex. July 7, 2026).[1] As *Parker* cautioned, however, when "other courts in this circuit have opted to replicate the district court's errors exactly," the answer is to insist that

[1] Although *Ward* has limited persuasive value on its own terms, this Court has since stayed the judgment pending appeal. *See* Order, *Ward v. Muth*, No. 26-50619, ECF No. 52 (5th Cir. Sept. 18, 2026) (per curiam).

"the PLRA must be strictly enforced," 171 F.4th at 756, rather than perpetuate those errors.

* * *

The Court should hold that the PLRA governs this decree, hold that the decree has been stayed since December 7, 2025, and remand with instructions to rule promptly under § 3626(b)(3).

## II. THE CONSENT DECREE ALSO CANNOT SURVIVE THE CHANGE IN LOUISIANA LAW.

The decree also fails for a second, independent reason. The decree provides that the policy remains in force only "absent a change in federal or state law applicable to immigration detainers." ROA.1383. Act 314 supplied that change. *See* La. R.S. 33:81 *et seq*. The district court therefore agreed that Act 314 "squarely falls within the type of change contemplated by the Consent Decree." ROA.2335 n.17. Under Rule 60(b), that should have also ended the matter.[2]

[2] Plaintiffs make much ado about appellate jurisdiction and *Navy v. School Board of St. Mary Parish*, 166 F.4th 550 (5th Cir. 2026). *See* Red.Br.6, 34–36. But *Navy* addressed ordinary § 1292(a)(1) review of an order that merely "maintain[ed] the status quo" while a dissolution motion remained pending. *Id.* at 555. Because the PLRA separately applies, that problem disappears, for § 3626(e)(4) makes an order interfering with the automatic stay appealable under § 1292(a)(1) "regardless of how the order is styled."

That is where the district court and Plaintiffs run into *Chisom*. A consent decree must be read "within its four corners," because "it is the language of a consent decree that defines the obligations of the parties." 116 F.4th at 316 (citation omitted). Here, the parties conditioned the policy's "permanent effect" on the absence of "a change in federal or state law applicable to immigration detainers." ROA.1383. But the district court instead required that Act 314 be "applicable" to the decree and be held "valid" under the Louisiana Constitution before giving that condition effect. ROA.2335. Neither conditions appears in the consent decree.

Perhaps recognizing the problem, Plaintiffs pivot to legislative history, emphasizing statements from Act 314's sponsors that the law would not "violate" or "jeopardiz[e]" the decree. Red.Br.38–39. But those statements have nothing to do with whether it is "a change in federal or state law applicable to immigration detainers." ROA.1383.

Plaintiffs' fallback is modification. They say a qualifying change could be "as minimal as a change to the form used by ICE to request an immigration detainer" and therefore "leaves the door open to modifying rather than terminating" the decree. Red.Br.38–39. But modify what?

The policy is the decree's sole prospective substantive obligation, and the parties gave *that policy* "permanent effect" only until a qualifying change in law occurred. ROA.1382–84. Nothing in Paragraph 4 preserves whichever pieces Plaintiffs would prefer to keep after that condition occurs.

Plaintiffs, moreover, have already had the modification opportunity they now request. At the intervention hearing, Plaintiffs and OPSO told the district court that they had begun the decree's mediation process, and OPSO said it would "absolutely … contemplate" collaborating to work toward modifying the decree. ROA.2086–87. Months later, the court found that the mediation had apparently "either not occurred or resulted in no changes" and noted the "passage of time with no action by OPSO." ROA.2092–94. Sending the parties back to negotiate an unspecified replacement for a policy whose promised permanent effect has ended would rewrite the bargain they struck. The policy's promised permanent effect ended, so the decree should be terminated.

## CONCLUSION

The Court should reverse and direct that the consent decree be terminated and the case dismissed.

Dated: September 18, 2026

Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General of Louisiana

J. BENJAMIN AGUIÑAGA
Solicitor General

*/s/ Zachary Faircloth*
ZACHARY FAIRCLOTH
Principal Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 421-4088

*Counsel for Intervenor-Appellant*

**CERTIFICATE OF SERVICE**

I certify that on September 18, 2026, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

*/s/ Zachary Faircloth*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this brief complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7) because it contains 2,953 words, excluding the parts of the document exempted by Rule 32(f); and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook font, except for footnotes in 12-point font) using Microsoft Word (the same program used to calculate the word count).

*/s/ Zachary Faircloth*

Dated: September 18, 2026